UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA

MARK LEYSE and all others similarly
situated,

                                        Plaintiffs,                          Case No. 3:09-00097-RJC-DLH

                  -against-

BANK OF AMERICA, NATIONAL
ASSOCIATION,

                                        Defendant.


**BANK OF AMERICA, NATIONAL ASSOCIATION'S MEMORANDUM
OF LAW IN SUPPORT OF ITS MOTION TO DISMISS OR TRANSFER THIS ACTION,
<u>AND TO AWARD BANK OF AMERICA'S ATTORNEYS' FEES AND COSTS</u>**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................... ii

PRELIMINARY STATEMENT ................................................................................. 1

RELEVANT BACKGROUND .................................................................................. 3

    A.    The Telephone Consumer Protection Act ............................................... 3

    B.    Mr. Bank and Ms. Dutriaux Commence a Putative TCPA Class Action in the Southern District of New York ..................................................... 5

    C.    The *Dutriaux* Action is Stayed by Judge Koeltl ..................................... 7

    D.    Messrs. Bank and Leyse Re-file Ms. Dutriaux's Claim in this Court .................. 8

    E.    Messrs. Bank and Leyse Refuse to Dismiss the Complaint ................................ 9

ARGUMENT ............................................................................................................ 11

I.     THE COURT SHOULD DISMISS THIS ACTION BECAUSE MR. LEYSE LACKS STANDING ............................................................................ 11

    A.    Mr. Leyse Fails to Plead (and Cannot Prove) Statutory Standing ....................... 12

    B.    Mr. Leyse Fails to Plead (and Cannot Prove) Article III Standing....................... 14

II.    THE COURT SHOULD DISMISS THIS ACTION BASED ON THE FIRST-FILED *DUTRIAUX* ACTION ............................................................ 15

    A.    The *Dutriaux* Action was Filed More Than Four Years Ago and is Still Pending in the Southern District of New York ................................... 16

    B.    Mr. Leyse's Claim is Based on the Same Telephone Call as Ms. Dutriaux's Claim, and the Putative Class is the Same as in the *Dutriaux* Action ....................................................................................... 17

    C.    The Legal and Factual Issues are the Same as in the *Dutriaux* Action................ 18

III.   THE COURT SHOULD, IN THE ALTERNATIVE, TRANSFER THIS ACTION TO THE SOUTHERN DISTRICT OF NEW YORK..................................... 19

IV.   THE COURT SHOULD AWARD BANK OF AMERICA THE ATTORNEYS' FEES AND COSTS INCURRED IN CONNECTION WITH THIS MOTION ............. 22

CONCLUSION ......................................................................................................... 24

## TABLE OF AUTHORITIES

**Cases**                                                                                                      **Page(s)**

*Alke v. L.B. White Co.*,
   Civ. No. 3:08-cv-88-C, 2008 WL 2447357 (W.D.N.C. June 13, 2008) ................................21

*AlohaCare v. Hawaii Dep't of Human Services*,
   567 F. Supp. 2d 1238 (D. Hawaii 2008) ...........................................................................12

*Auto-Owners Ins. Co. v. Cash*,
   No. 09cv63, 2009 WL 1563918 (W.D.N.C. June 1, 2009) .............................................20, 21

*Bonime v. Avaya, Inc.*,
   No. 06-CV-1630 (CBA), 2006 WL 3751219 (E.D.N.Y. Dec. 20, 2006),
   *aff'd*, 547 F.3d 497 (2d Cir. 2008) ................................................................................5, 7, 17

*Cardoza v. T-Mobile USA Inc.*,
   No. 08-5120 SC, 2009 WL 723843 (N.D. Cal. Mar. 18, 2009) ...............................................20

*Chambers v. Naseo, Inc.*,
   501 U.S. 32 (1991) .......................................................................................................22

*Charlotte-MecklenBurg Hospital Authority v. Facility Wizard Software, Inc.*,
   No. 3:08-cv-463-FDW, 2008 WL 5115281 (W.D.N.C. Dec. 4, 2008) ......................16, 19, 20

*Chosin Few, Inc. v. Scott*,
   209 F. Supp. 2d 593 (W.D.N.C. 2002) .................................................................................22

*Continental Grain C. v. Barge FBL-585*,
   364 U.S. 19 (1960) .......................................................................................................21

*Dutriaux v. Bank of America, National Association*,
   Civ. No. 05-3838-JGK (S.D.N.Y., filed Apr. 12, 2005) ................................................. *passim*

*Eichenholz v. Brennan*,
   677 F. Supp. 198 (S.D.N.Y. 1988) ...................................................................................21

*Ganci & Leyse v. New York Transit Authority*,
   163 Fed. Appx. 7 (2d Cir. Dec. 21, 2005) ...........................................................................9

*Ganci v. Cape Canaveral Tour & Travel, Inc.*,
   791 N.Y.S.2d 869, 2004 WL 1469372 (N.Y. Sup. Ct. Apr. 15, 2004)......................................4

# TABLE OF AUTHORITIES
## (Con't)

**Cases**                                                                                                      **Page(s)**

*Holster v. Gatco, Inc.*,
   485 F. Supp. 2d 179 (E.D.N.Y. 2007),
   *aff'd without opinion*, No. 07-2191 (2d Cir. Oct. 31, 2008) .......................................5, 7, 8, 17

*In re Mutual Funds Investment Litig.*,
   529 F.3d 207 (4th Cir. 2008) .................................................................14

*Italian Colors Restaurant v. American Express Co.*,
   No. C 03-3719 SI, 2003 WL 22682482 (N.D. Cal. Nov. 10, 2003) ........................................21

*Johnson v. Oldcastle Precast, Inc.*,
   522 F. Supp. 2d 739 (D. Md. 2007) .........................................................17

*Kopff v. World Research Group, LLC*,
   568 F. Supp. 2d 39 (D.D.C. 2008) ..........................................................14

*Learning Network, Inc. v. Discovery Commc'ns, Inc.*,
   11 Fed. Appx. 297 (4th Cir. June 7, 2001) ...............................................15

*Lehman v. Revolution Portfolio LLC*,
   166 F.3d 389 (1st Cir. 1999)...............................................................16, 17

*Leyse v. Clear Channel Broad., Inc.*,
   301 Fed. Appx. 20 (2d Cir. Dec. 2, 2008) ..............................................5, 8

*Leyse v. Domino's Pizza LLC*,
   48 A.D.3d 359 (N.Y. App. Div. 1st Dep't 2008)........................................9

*Leyse v. Domino's Pizza LLC*,
   Civ. No. 04-2411, 2004 WL 1900328 (S.D.N.Y. Aug. 24, 2008)...........................................8

*Leyse v. Flagship Cap. Servs. Corp.*,
   22 A.D.3d 426 (N.Y. App. Div. 1st Dep't 2005).......................................4

*Nutrition & Fitness, Inc. v. Blue Stuff, Inc.*,
   264 F. Supp. 2d 357 (W.D.N.C. 2003) ..................................................16

*Raines v. Byrd*,
   521 U.S. 811 (1997).............................................................................14

*Rapture Shipping Ltd. v. Allround Fuel Trading B.V. Chemoil*,
   Civ. No. 06-5296-JFK, 2006 WL 2474869 (S.D.N.Y. Aug. 28, 2006)............................17, 19

<u>**TABLE OF AUTHORITIES**</u>
(Con't)

<u>**Cases**</u>                                                                                                   <u>**Page(s)**</u>

*Reiser v. RTI Int'l Metals, Inc.*,
  1:08-CV-00729, 2009 WL 1097250 (S.D. Ohio Apr. 22, 2009)...........................................21

*Richmond, Fredericksburg & Potomac Railroad Co. v. United States*,
  945 F.2d 765 (4th Cir. 1991) .......................................................................................12

*Rudgayzer & Gratt v. LRS Commc'ns., Inc.*,
  776 N.Y.S.2d 158 (N.Y. Civ. Ct. 2003),
  *aff'd*, 789 N.Y.S.2d 601 (N.Y. App. Div. 2d Dep't 2004).........................................4

*Salvin v. American National Insurance Co.*,
  281 Fed. Appx. 222, 2008 WL 2369095 (4th Cir. June 10, 2008) .........................................23

*SAS Institute, Inc. v. PracticingSmarter, Inc.*,
  353 F. Supp. 2d 614 (M.D.N.C. 2005) ..........................................................................15, 19

*Stag v. Board of Trustees*,
  55 F.3d 943 (4th Cir. 1995) .......................................................................................22

*Tingley v. Beazer Homes Corp.*,
  Civ. No. 3:07cv176, 2008 WL 1902108 (W.D.N.C. Apr. 25, 2008)...............................11, 15

*Volvo Road Machinery, Inc. v. J.D. Evans, Inc.*,
  Civ. No. 1:08-cv-156, 2008 WL 4610045 (W.D.N.C. Oct. 16, 2008) ...................................20

*Weber v. Rainbow Software, Inc.*,
  21 A.D.3d 411 (N.Y. App. Div. 3d Dep't 2005) ...................................................................4

*White Tail Park, Inc. v. Stroube*,
  413 F.3d 451 (4th Cir. 2005) ............................................................................12, 14, 15

*Wilmington Shipping Co. v. New England Life Ins. Co.*,
  496 F.3d 326 (4th Cir. 2007) .......................................................................................11

*Youngblood v. Citrix Assocs. of New York Cotton Exchange, Inc.*,
  99 F.R.D. 570 (S.D.N.Y. 1983) .................................................................................16, 17

<u>**Statutes, Regulations and Rules**</u>

28 U.S.C. § 1404(a) ...................................................................................................20, 21

28 U.S.C. § 1927.........................................................................................................22, 23

47 U.S.C. § 227.................................................................................................................3

## TABLE OF AUTHORITIES
### (Con't)

**Statutes, Regulations and Rules**                                                   **Page(s)**

47 U.S.C. § 227(a)(2)(A) ...................................................................................12

47 U.S.C. § 227(b)(1) .........................................................................................3

47 U.S.C. § 227(b)(1)(B) ............................................................................. *passim*

47 U.S.C. § 227(b)(3) ...................................................................................4, 13

47 C.F.R. § 64.1200(a)(2) ............................................................................ *passim*

47 C.F.R. § 64.1200(c)......................................................................................12

47 C.F.R. § 64.1200(d) .....................................................................................12

47 C.F.R. § 64.1200(f)(4) .................................................................................13

47 C.F.R. § 64.1200.......................................................................................3, 12

N.Y.C.P.L.R. § 901(b) ................................................................................. *passim*

### Other Authorities

137 Cong. Rec. S16205-06 (daily ed. Nov. 7, 1991)......................................................4

S. Rep. No. 102-178 (1991) ...............................................................................12

## <u>PRELIMINARY STATEMENT</u>

Plaintiff Mark Leyse commenced this putative class action against Bank of America, National Association ("Bank of America") under the Telephone Consumer Protection Act ("TCPA") notwithstanding that Plaintiff's New York counsel (Todd Bank) and Mr. Leyse's roommate (Genevieve Dutriaux) had already filed the <u>same</u> claim based on the <u>same</u> alleged telephone call in the Southern District of New York more than four years ago, *Dutriaux v. Bank of America, National Association*, Civ. No. 05-3838-JGK (S.D.N.Y., filed Apr. 12, 2005) ("*Dutriaux* Action").[1] The *Dutriaux* Action is still pending in the Southern District of New York before the Honorable John G. Koeltl. Nevertheless, Plaintiff's New York counsel and Plaintiff re-filed Ms. Dutriaux's claim in this Court to try to circumvent New York law barring Ms. Dutriaux from proceeding with a putative class action. The Court should deny Messrs. Bank and Leyse's effort to litigate Ms. Dutriaux's claim in this Court, and should award Bank of America its attorneys' fees and costs incurred in connection with this action.

As a threshold matter, the Court lacks subject matter jurisdiction because Mr. Leyse has not alleged—and cannot allege (or prove)—that he has standing. The March 11, 2005 telephone call was placed to <u>Ms. Dutriaux's</u> residential telephone line. While it appears that Mr. Leyse lived in Ms. Dutriaux's apartment at the time, the TCPA was not enacted for the benefit of persons who voluntarily answer the telephones of others. The TCPA was intended to protect the privacy interests of actual residential telephone line <u>subscribers</u> such as Ms. Dutriaux.

---

[1] Plaintiff filed this action *pro se,* but shortly thereafter Mr. Jackson, as North Carolina counsel, and Mr. Bank appeared as counsel of record for Plaintiff. Upon being informed that the *Dutriaux* Action was pending, Mr. Jackson sought to withdraw, and Mr. Bank moved to proceed without local counsel. That motion was denied yesterday. (Docket No. 17.)

Even if Mr. Leyse had standing, this action should be dismissed under the "first filed" rule. The *Dutriaux* Action was filed April 12, 2005, discovery has commenced, and Judge Koeltl already is familiar with the legal and factual issues implicated by Ms. Dutriaux's alleged TCPA claim. Messrs. Bank and Leyse now improperly seek to begin litigating Ms. Dutriaux's claim in a different court four years later—notwithstanding that Mr. Leyse (if he even has a viable claim) and other members of the putative class <u>already</u> are members of the putative class in the *Dutriaux* Action.

If this action is not dismissed based on Mr. Leyse's lack of standing or the "first filed" rule, it should be transferred to the Southern District of New York for consolidation with the *Dutriaux* Action. Allowing the same claims to be litigated simultaneously in two federal courts would cause an enormous waste of judicial resources, impose a substantial and unfair burden on Bank of America, and risk inconsistent judgments and double recovery. Indeed, the Court already has recognized that this putative national class action would prove "a complex action" and that "the amount at stake is substantial." (7/21/09 Order at 1-2 (Docket No. 17).)

Finally, Plaintiff's New York counsel and Plaintiff should be ordered to reimburse Bank of America for the attorneys' fees and costs incurred in connection with this action. Plaintiff's New York counsel (and presumably Plaintiff) were well aware that the *Dutriaux* Action is still pending and is based on the exact same telephone call as this case at the time that they commenced this action. To his credit, Plaintiff's North Carolina counsel sought to withdraw from the case after Bank of America informed him that the *Dutriaux* Action was pending. Messrs. Bank and Leyse, however, refused to dismiss the Complaint, and Mr. Bank moved to proceed without North Carolina counsel—a motion denied by the Court yesterday. (Docket No. 17.) Messrs. Bank and Leyse should be held fully accountable for the fees and costs incurred by Bank of America and for their disregard for this Court's valuable resources.

2

**RELEVANT BACKGROUND**[2]

**A.      The Telephone Consumer Protection Act**

In 1991, in an effort to curb a perceived proliferation of telemarketing calls, Congress

enacted the TCPA, 47 U.S.C. § 227.  Section 227(b)(1) of the TCPA imposes various restrictions

on, *inter alia*, using automated dialing systems simultaneously to engage two or more lines of a

business; sending unsolicited advertisements to facsimile machines; and initiating telephone calls

using an artificial or prerecorded voice to deliver an unsolicited advertisement.   Section

227(b)(1)(B) provides as follows:

> It shall be unlawful for any person within the United States, or any person outside
> the United States if the recipient is within the United States to initiate any
> telephone call to any residential telephone line using an artificial or prerecorded
> voice to deliver a message without the prior express consent of the called party,
> unless the call is initiated for emergency purposes or is exempted by rule or order
> by the [Federal Communications] Commission.

47 U.S.C. § 227(b)(1)(B).  Regulation 47 C.F.R. § 64.1200 promulgated thereunder provides as

follows:

> No person or entity may . . . [i]nitiate any telephone call to any residential line
> using an artificial or prerecorded voice to deliver a message without the prior
> express consent of the called party, unless the call . . . [i]s made for commercial
> purposes but <u>does not include or introduce an unsolicited advertisement or</u>
> <u>constitute a telephone solicitation</u>.

47 C.F.R. § 64.1200(a)(2) (emphasis added).

In addition to civil enforcement proceedings by governmental agencies, the TCPA

provides for a private right of action pursuant to which individuals may seek to enjoin violations

and recover statutory damages of $500 per violation:   "A person or entity may, <u>if otherwise</u>

<u>permitted by the laws or rules of court of a State</u>, bring [an action] in an appropriate court of that

---

[2]   Plaintiff's well-pleaded allegations are assumed to be true solely for purposes of this motion.
Bank of America does not, and does not intend to, concede the truth of any of the allegations set forth in
Plaintiff's Complaint in this action or in the Second Amended Complaint in the *Dutriaux* Action.

State." 47 U.S.C. § 227(b)(3) (emphasis added). Congress anticipated that TCPA claims would be handled by state courts, preferably small claims courts that "would allow the consumer to appear before the court without an attorney" and without incurring attorney's fees. *See, e.g.*, 137 Cong. Rec. S16205-06 (daily ed. Nov. 7, 1991).

Plaintiff's New York counsel (Mr. Bank), however, brought several putative TCPA class actions in New York State court. These cases proved unsuccessful because New York Civil Practice Law and Rules 901(b) prohibits class actions that seek to recover statutory penalties unless the statute expressly permits such actions:

> Unless a statute creating or imposing a penalty, or a minimum measure of recovery specifically authorizes the recovery thereof as a class action, an action to recover a penalty, or minimum measure of recovery created or imposed by statute may not be maintained as a class action.

N.Y.C.P.L.R. § 901(b).[3]   The TCPA does <u>not</u> expressly authorize class actions. Indeed, Mr. Bank was chastised by at least one Court when he sought to vacate a judgment in his client's favor in order to amend the complaint to continue the action as a class action. *See Rudgayzer & Gratt v. LRS Commc'ns, Inc.*, 776 N.Y.S.2d 158, 160, 165-66 (N.Y. Civ. Ct. 2003) ("If I were to grant any portion to this motion, it would make this Court an accomplice to plaintiff's use of the judicial system for his own pecuniary interest . . . .  It is 'chutzpah' to have this Court aid in the padding of plaintiff's counsel's pockets.").

Upon passage of the Class Action Fairness Act in 2005, Mr. Bank promptly filed numerous putative TCPA class actions (including the *Dutriaux* Action) in <u>federal</u> court to

---

[3]  *See, e.g.*, *Rudgayzer & Gratt v. LRS Commc'ns, Inc.*, 776 N.Y.S.2d 158, 166 (N.Y. Civ. Ct. 2003), *aff'd*, 789 N.Y.S.2d 601 (N.Y. App. Div. 2d Dep't 2004) (denying motion for leave to vacate judgment and proceed with putative TCPA class action under N.Y.C.P.L.R. § 901(b)); *Ganci v. Cape Canaveral Tour & Travel, Inc.*, 791 N.Y.S.2d 869, 2004 WL 1469372, at *1 (N.Y. Sup. Ct. Apr. 15, 2004) (N.Y.C.P.L.R. § 901(b) precludes TCPA class action); *Weber v. Rainbow Software, Inc.*, 21 A.D.3d 411, 411 (N.Y. App. Div. 3d Dep't 2005) (same); *Leyse v. Flagship Cap. Servs. Corp.*, 22 A.D.3d 426, 426 (N.Y. App. Div. 1st Dep't 2005) (same).

attempt to circumvent N.Y.C.P.L.R. § 901(b).[4]   Some of those putative TCPA class actions already have been dismissed on the ground that N.Y.C.P.L.R. § 901(b) is a substantive law that also operates to bar class actions in federal court.[5]   As discussed below, however, the *Dutriaux* Action still is pending before Judge Koeltl.

**B.**   **Mr. Bank and Ms. Dutriaux Commence a Putative TCPA Class Action in the Southern District of New York**

On April 12, 2005, Mr. Bank and Ms. Dutriaux commenced a putative class action against Bank of America in the Southern District of New York.  Ms. Dutriaux alleged that she "was and is at all relevant times a subscriber to a residential telephone line located in New York, New York" and that "[o]n or about March 11, 2005, Bank of America willfully and knowingly placed [a telephone call] to the answering device connected to [her] residential telephone line." (Compl. ¶¶ 7, 9, Dutriaux Docket No. 1 (Mooney Ex. 2).) [6]  Ms. Dutriaux alleged that the calls included prerecorded "unsolicited advertisements" in violation of 47 U.S.C. § 227(b)(1)(B) and 47 C.F.R. § 64.1200(a)(2).  (*Id.* ¶¶ 14-17.)   Ms. Dutriaux sought class damages exceeding $5 million, an injunction, and attorneys' fees and costs.  (*Id.*)

---

[4]   The Class Action Fairness Act allows the exercise of diversity jurisdiction over certain class actions plaintiffs' claims exceeding $5 million in the aggregate, allowing putative TCPA plaintiffs to satisfy the jurisdictional amount by alleging improper calls or faxes to 10,000 or more persons (each class member claiming $500 in statutory damages).

[5]   *See, e.g.*, *Bonime v. Avaya, Inc.*, No. 06-CV-1630 (CBA), 2006 WL 3751219, at *3 (E.D.N.Y. Dec. 20, 2006), *aff'd*, 547 F.3d 497 (2d Cir. 2008); *Holster v. Gatco, Inc.*, 485 F. Supp. 2d 179, 185 (E.D.N.Y. 2007), *aff'd without opinion,* No. 07-2191 (2d Cir. Oct. 31, 2008); *Leyse v. Clear Channel Broad.,* 301 Fed. Appx. 20 (2d Cir. Dec. 2, 2008).

[6]   Citations herein take the following forms:  "Dutriaux Docket No. __" are to docket entries in *Dutriaux v. Bank of America National Association*, Civ. No. 05-3838 (S.D.N.Y.) (JGK); "Leyse Docket No. __" are to docket entries in *Leyse v. Bank of America, National Association*, Civ. No. 09-97 (W.D.N.C.) (RJC); "Mooney ¶ __" and  "Mooney Ex. __" are to the Declaration of Kyle Mooney, dated July 21, 2009, and exhibits thereto; and "Nelson ¶ __" and "Nelson Ex. __" are to the Declaration of John Nelson, dated July 22, 2009, and exhibits thereto.

The Rule 26(f) Report filed by the parties in the *Dutriaux* Action contemplated that Bank of America would move promptly for summary judgment on two threshold issues: (1) whether the message purportedly left on Ms. Dutriaux's answering device constituted an "unsolicited advertisement"; and (2) whether the putative class action was barred by N.Y.C.P.L.R. § 901(b). (Joint Report at 2, Dutriaux Docket No. 16.) The parties subsequently exchanged initial disclosures, interrogatories and requests for production, and Ms. Dutriaux produced certain audio recordings of calls with alleged Bank of America representatives. (Mooney ¶ 15.)

Shortly before Bank of America was to file its summary judgment motion, however, Ms. Dutriaux filed a series of motions in which she first sought and obtained leave (on Bank of America's consent) to file a First Amended Complaint to assert an additional claim, then withdrew the additional claim and filed a Second Amended Complaint. In the Second Amended Complaint, Ms. Dutriaux conceded that the March 11, 2005 call included only identification information legally <u>required</u> under the TCPA. (SAC ¶ 10 (Mooney Ex. 4).) According to Ms. Dutriaux, however, a violation of the TCPA occurred when she voluntarily returned the telemarketing call, listed to an automated menu, and spoke to alleged Bank of America representatives about credit card offerings. (*Id.* ¶¶ 10, 15-18.)

Bank of America promptly moved to dismiss Ms. Dutriaux's Second Amended Complaint on the ground she still failed to state a viable TCPA claim and that, in any event, N.Y.C.P.L.R. § 901(b) still precluded maintaining the action as a class action. (Dutriaux Docket No. 35.) Bank of America relied on, *inter alia*, two recent decisions in putative TCPA class actions—both commenced by Mr. Bank—holding that N.Y.C.P.L.R. § 901(b) barred putative TCPA class actions in both state and federal court, *Holster v. Gatco, Inc.*, 485 F. Supp. 2d 179

(E.D.N.Y. 2007), and *Bonime v. Avaya, Inc.*, No. 06-CV-1630 (CBA), 2006 WL 3751219 (E.D.N.Y. Dec. 20, 2006).[7]

### C.     The *Dutriaux* Action is Stayed by Judge Koeltl

On July 16, 2007, Judge Koeltl stayed the *Dutriaux* Action pending resolution of the appeals in *Holster* and *Bonime* "without prejudice to [Bank of America's] filing a renewed motion after resolution of the appeals in [those] cases."  (Dutriaux Docket No. 41 (Mooney Ex. 5).)  On October 31, 2008, the Court of Appeals for the Second Circuit affirmed the decisions in *Holster* and *Bonime* finding that plaintiffs could not circumvent N.Y.C.P.L.R. § 901(b) by filing their claims in federal court:

> The district court dismissed the complaint because New York law does not permit private actions for violations of the TCPA to be brought as class actions.  *See* New York Civil Practice Law and Rules 901(b).  We agree that N.Y.C.P.L.R. 901(b) applies to such suits, even when plaintiff has invoked federal diversity jurisdiction.

*Bonime v. Avaya, Inc.*, 547 F.3d 497, 497 (2d Cir. 2008); *see also Holster v. Gatco*, No. 07-2191 (2d. Cir. Oct. 31, 2008) (affirming judgment without opinion).

Based on the Court of Appeals' holding, Bank of America proposed that Mr. Bank stipulate to dismissal of the claims in the *Dutriaux* Action in order to save the parties the time and expense associated with briefing a renewed motion, and to avoid burdening the court with unnecessary motion practice.  (Mooney Ex. 6.)  Mr. Bank refused.  (*Id*.)  The Court of Appeals subsequently denied plaintiffs' motions for rehearing and re-hearing *en banc* in *Holster* and *Bonime*.  On April 16, 2009, Mr. Bank petitioned the United States Supreme Court for a writ of

---

[7]  The *Holster* and *Bonime* decisions were in accord with numerous other decisions finding that N.Y.C.P.L.R. § 901(b) applies with equal force in state and federal court.  (*See generally* Bank of America Mem. of Law at 10-11 (citing cases), Dutriaux Docket No. 35.)

certiorari in the *Holster* action.  (Mooney Ex. 7.)  A response to the petition is due August 17, 2009.  (*Id.*)

On December 1, 2008, the *Dutriaux* Action was administratively closed pursuant to the Memorandum of the Administrative Office of the U.S. Courts, dated June 15, 1973 ("AO Memo") based on the fact that the stay had continued (without any filings) for more than one year.  (*See* Dutriaux Docket No. 42 (Mooney Ex. 1).)  That administrative closure, of course, serves merely administrative purposes; it does not terminate the action.  (*See infra* Part II.A.)  Rather, the stay remains in effect and Bank of America will renew its motion to dismiss after resolution of the *Holster* appeal.

### D.       Messrs. Bank and Leyse Re-file Ms. Dutriaux's Claim in this Court

On March 10, 2009, Plaintiff Mark Leyse commenced this putative TCPA class action against Bank of America.  (Leyse Docket No. 1 (Mooney Ex. 9).)  Mr. Leyse, like Ms. Dutriaux, contends that Bank of America placed a telephone call on March 11, 2005 in violation of 47 U.S.C. § 227(b)(1)(B) and regulation 47 C.F.R. § 64.1200(a)(2).  (*Id.* ¶¶ 2, 4, 18-21.)  Mr. Leyse, like Ms. Dutriaux, seeks class damages exceeding $5 million, an injunction, and attorneys' fees and costs.  (*Id.* ¶¶ 2, 4, 18-21.)

While Mr. Leyse filed the action *pro se*, the litigation clearly was instigated by Plaintiff's New York counsel, Mr. Bank.  Earlier this year, Mr. Bank threatened to re-file the *Dutriaux* Action in North Carolina to attempt to circumvent N.Y.C.P.L.R. § 901(b).  (Mooney ¶ 16.)  Mr. Bank also has previously represented Mr. Leyse in several other putative class actions, including at least one putative TCPA class action.[8]  Moreover, Mr. Leyse's North Carolina

---

[8]   *See, e.g.*, *Leyse v. Clear Channel Broad., Inc.*, 301 Fed. Appx. 20 (2d Cir. Dec. 2, 2008) (putative class action for alleged violations of the TCPA); *Leyse v. Domino's Pizza LLC*, Civ. No. 04-2411, 2004 WL 1900328 (S.D.N.Y. Aug. 24, 2008) (putative class action alleging that Domino's Pizza

counsel Mr. Jackson confirmed that Mr. Bank—not Mr. Leyse—contacted Mr. Jackson regarding his appearance as local counsel. (Docket No. 10.) Finally, Mr. Leyse's Complaint is virtually identical to Ms. Dutriaux's Second Amended Complaint. (*Compare* Dutriaux Docket No. 33 (Mooney Ex. 4) *with* Leyse Docket No. 1 (Mooney Ex. 9).)

Mr. Leyse's claim, in fact, appears to be based on the very same telephone call already at issue in the *Dutriaux* Action—a telephone call to Ms. Dutriaux's residential telephone line. The public records confirm that as of March 11, 2005, Ms. Dutriaux and Mr. Leyse shared a residence in New York City, and also confirm a residential telephone line at that address in Ms. Dutriaux's name.[9] In addition, the relevant call records confirm that a call was placed to Ms. Dutriaux at that telephone number on March 11, 2005. (Nelson Ex. 1.) They do not reflect any call to Mr. Leyse. (*Id.*)

### E.    Messrs. Bank and Leyse Refuse to Dismiss the Complaint

On June 3, 2009, counsel for Bank of America contacted Plaintiff's counsel and confirmed that the *Leyse* Action was based on the very same telephone call already at issue in the *Dutriaux* Action:

> This telephone call [at issue in the *Leyse* Action] appears to be the very same telephone call that already forms the basis of a putative TCPA class action filed on April 12, 2005 in the Southern District of New York in which Mr. Bank represents plaintiff Genevieve Dutriaux, *Dutriaux v. Bank of America, National Association*, 05-CV-3838 (S.D.N.Y.).

---

trespassed on plaintiff's property by slipping advertising flier under his door without prior permission); *Leyse v. Domino's Pizza LLC*, 48 A.D.3d 359, 360 (N.Y. App. Div. 1st Dep't 2008) (same); *Ganci & Leyse v. New York Transit Authority*, 163 Fed. Appx. 7 (2d Cir. Dec. 21, 2005) (putative class action under Section 1983 alleging that transit authority's termination of use of tokens violated the takings clause of the Fifth Amendment).

[9] Pursuant to section II (I) of the Court's Administrative Procedures Governing Filing and Service by Electronic Means as revised on April 24, 2008, the reports confirming the address at which Mr. Leyse lived with Ms. Dutriaux, and showing the residential telephone number at that address in Ms. Dutriaux's name, have not been filed herewith. However, they promptly will be provided to the Court if Plaintiff disputes those facts or the Court otherwise believes it necessary to review the reports.

(Mooney Ex. 10.)  Bank of America informed Plaintiff's counsel that it intended to renew its motion to dismiss in the *Dutriaux* Action as soon as the stay expired, and that Plaintiff's counsel could not "simply re-fil[e] Ms. Dutriaux's claims in the Western District of North Carolina (in her roommate's name) before the stay expires" to attempt to circumvent the N.Y.C.P.L.R. § 901(b) and the other grounds for dismissal set forth in Bank of America's motion.  (*Id.*)  Bank of America warned Plaintiff that it would seek to recover any fees and costs it was forced to incur if the action was not voluntarily dismissed:

> If Bank of America is forced to take further steps to remedy the improper filing of the *Leyse* Action in the Western District of North Carolina, including, for example, moving to dismiss the Complaint, we will seek to hold Mr. Leyse and plaintiff's counsel jointly liable for the full attorneys' fees and costs incurred.

(*Id.* at 4.)

Plaintiff's counsel did not dispute that this action was based on the same telephone call at issue in the *Dutriaux* Action.  Plaintiff's North Carolina counsel, in fact, confirmed that he would seek to withdraw as counsel and would discuss the voluntary dismissal of the case with Mr. Leyse.  (Mooney Ex. 11; Leyse Docket No. 8.)   Plaintiff's North Carolina counsel subsequently moved to withdraw and Bank of America filed a consent motion seeking a 30-day extension of its time to respond to the Complaint to afford Mr. Leyse an opportunity to secure new North Carolina counsel.  (Docket No. 8; *see also* Mooney Ex. 12.)

This Court denied the motion to withdraw on the ground that no provision in the Local Rules allowed Plaintiff's New York counsel to continue to represent Mr. Leyse without North Carolina counsel.  (Leyse Docket No. 11.)  Plaintiff's New York counsel sought Bank of America's consent to stay the action to provide him with additional time to find North Carolina counsel willing to represent Mr. Leyse.  (Mooney Ex. 12.)  Bank of America responded that it

could not agree to a further delay and reiterated its request that the action be voluntarily dismissed <u>before</u> Bank of America was forced to incur substantial fees and costs:

> We cannot agree to another extension of time.  As set forth in the June 3, 2009 letter, we intend to move to dismiss the *Leyse* Action and reserve our right to hold Mr. Leyse and counsel jointly liable for the full attorneys' fees and costs incurred in connection with that effort. . . .  [I]n order to avoid a motion on attorney fees and costs, we request that Mr. Leyse voluntarily withdraw the complaint no later than July 2, 2009.

> (Mooney Ex. 12.)

Plaintiff's New York counsel still refused to dismiss the Complaint, and moved to proceed <u>without</u> North Carolina counsel.  (Leyse Docket No. 16.)  Even after the Court denied that motion (Docket No. 17), Plaintiff's New York counsel did not voluntarily dismiss the Complaint.  Bank of America, therefore, has been forced to file this motion.

## <u>ARGUMENT</u>

## I.   THE COURT SHOULD DISMISS THIS ACTION BECAUSE MR. LEYSE LACKS STANDING

Standing is a fundamental component of the Court's subject matter jurisdiction and a plaintiff invoking a statutory right of action must establish both statutory and Article III standing "or the federal court to which the plaintiff has come is powerless to hear the case."  *Wilmington Shipping Co. v. New England Life Ins. Co.*, 496 F.3d 326, 333-34 (4th Cir. 2007).  A defendant properly may challenge a plaintiff's standing by a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1).  *See, e.g., Tingley v. Beazer Homes Corp.*, Civ. No. 3:07cv176, 2008 WL 1902108, at *2 (W.D.N.C. Apr. 25, 2008).

A defendant may assert a "facial attack" on standing by contending that plaintiff's well-pleaded allegations do not establish standing.  *See id.* at *2.  Alternatively, a defendant may assert a "factual attack" by challenging standing through affidavits and other evidence beyond

the pleadings.  *See White Tail Park, Inc. v. Stroube*, 413 F.3d 451, 459 (4th Cir. 2005).[10]  In each case, the burden remains on plaintiff to establish standing.  *See id.*

As demonstrated below, Mr. Leyse's Complaint fails on its face to establish statutory and Article III standing and the Court, therefore, need not even consider evidence outside of the pleadings.  However, consideration of the pleadings in the *Dutriaux* Action and public records further confirm that Mr. Leyse cannot allege (or prove) that he has standing to bring this action.

### A.   Mr. Leyse Fails to Plead (and Cannot Prove) Statutory Standing

To establish statutory standing, a plaintiff must demonstrate that "'Congress . . . intended that the provision in question benefit the plaintiff.'"  *AlohaCare v. Hawaii Dep't of Human Services*, 567 F. Supp. 2d 1238, 1252 (D. Hawaii 2008) (quoting *Blessing v. Freestone*, 520 U.S. 329, 340 (1997)).  Congress enacted the TCPA provisions at issue here to protect residential telephone subscribers:  "The purposes of the bill are to protect the privacy interests of <u>residential telephone subscribers</u> by placing restrictions on unsolicited, automated telephone calls to the home. . . ."  S. Rep. No. 102-178, at 1 (1991) (emphasis added).[11]  Throughout the TCPA and the regulations promulgated thereunder, there are references to "residential <u>subscriber[s]</u>" and "residential telephone <u>subscriber[s]</u>."  *See, e.g.*, 47 U.S.C. § 227(a)(2)(A); 47 C.F.R. § 64.1200 (c)(1), (c)(2), (d) (emphasis added).

The very TCPA provisions invoked by Mr. Leyse confirm that they were intended to protect subscribers.  For example, 47 U.S.C. § 227(b)(1)(B) excepts calls that are made with "the

---

[10]  In resolving a factual attack on standing, the Court is to consider plaintiff's well-pleaded allegations as "mere evidence" and may consider affidavits and other evidence outside the pleadings without converting the motion into one for summary judgment.  *See Richmond, Fredericksburg & Potomac Railroad Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991).

[11]  *See also* S. Rep. No. 102-178, at 1 (1991); U.S. Code Cong. & Admin. News 1991, at 1968 ("The reported bill will result in a significant benefit in protecting the personal privacy of <u>residential telephone subscribers</u>." (emphasis added)).

prior express consent of the called party."  It clearly is the <u>subscriber</u> of the telephone line that may provide (or withhold) consent to initiate the call—<u>not</u> whomever happens to answer the subscriber's phone when it rings.

Moreover, 47 C.F.R. § 64.1200(a)(2) excepts calls "made to any person with whom the caller has an established business relationship at the time of the call."  Again, the exception clearly turns on the existence of an established business relationship with the <u>subscriber</u> of the telephone line, not the existence of such a relationship with whomever happens voluntarily to answer the subscriber's telephone.  The regulations themselves make this clear:  "The term *established business relationship* . . . means a prior or existing relationship formed by a voluntary two-way communication between a person or entity and <u>a residential subscriber</u> with or without the exchange of consideration. . . ."  47 C.F.R. § 64.1200(f)(4) (first emphasis in original, second emphasis added).

The private right of action set forth in Section 227(b)(3) confirms that the <u>subscriber</u> (and not other additional persons) can enforce the substantive TCPA provisions.  Section 227(b)(3)(B) provides for "$500 in damages, for each such violation[,]" clearly contemplating a single action and single recovery by the subscriber.  Likewise, Section 227(b)(3)(A) allows an action "to enjoin such violation[,]" relief that only the subscriber could seek.  A non-subscriber third party cannot properly seek enjoin telephone calls made to the telephone line of another person—who may have expressly consented to the call or have an established business relationship with the caller.

In short, the TCPA is intended to protect the privacy interests of residential telephone <u>subscribers</u> who have not consented to the calls and do not have a preexisting business relationship with the caller.  Because Mr. Leyse does <u>not</u> allege that he was the subscriber to the residential telephone line to which the March 11, 2005 call was placed, the Complaint should be

13

dismissed for lack of standing.  *See, e.g.*, *Kopff v. World Research Group, LLC*, 568 F. Supp. 2d 39, 42 (D.D.C. 2008) (wife/business assistant who accepted faxes sent to company fax machine maintained in home office did not have standing to assert claim for violation of TCPA fax provisions).  Moreover, Ms. Dutriaux's allegations in the *Dutriaux* Action, the public records, and the relevant call records confirm that the March 11, 2005 call was made to a telephone line in Ms. Dutriaux's name and that Mr. Leyse, therefore, cannot allege (and prove) standing to bring this action.  (Nelson Ex. 1.)

### B.    Mr. Leyse Fails to Plead (and Cannot Prove) Article III Standing

Even if Mr. Leyse could establish statutory standing (he cannot), Mr. Leyse also must establish Article III standing.  *See In re Mutual Funds Investment Litig.*, 529 F.3d 207, 216 (4th Cir. 2008); *see also Raines v. Byrd*, 521 U.S. 811, 820 n.3 (1997) ("It is settled that Congress cannot erase Article III's standing requirements by statutorily granting the right to sue to a plaintiff who would not otherwise have standing.").  To establish Constitutional standing, a plaintiff must allege (and prove) that he has "'(1) suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical; (2) there is a causal connection between the injury and the conduct complained of; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.'"  *See White Tail Park,* 413 F.3d at 458 (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)).

As demonstrated above, Mr. Leyse fails to allege that Bank of America placed a call to any residential telephone line as to which he was the subscriber.  Mr. Leyse also fails to allege that he answered the call, or that the prerecorded message was left on an answering device owned by him.  Mr. Leyse also fails to allege that he was the "called party," *i.e.*, the intended recipient of the call, or that anything in the prerecorded message possibly could have led

14

Mr. Leyse to believe the he was expected to <u>return</u> the call—a call that the message clearly indicated was made for "telemarketing purposes."  *See* Compl. ¶ 10 (Mooney Ex. 9); 47 C.F.R. § 64.1200(a)(6).    Finally, Mr. Leyse cannot properly seek to enjoin telephone calls to <u>Ms. Dutriaux's</u> residential telephone line.

In short, Mr. Leyse has not pleaded any "concrete and particularized" injury caused to him by Bank of America's alleged call that could be redressed by this Court.  Evidence outside the pleadings again confirms that Ms Dutriaux—not Mr. Leyse—is "'the proper party to bring [the]  suit.'"   *White  Tail  Park,*  413  F.3d  at  460-61  (quoting  *Raines*,  521  U.S.  at  818)).[12] Mr. Leyse's claim, therefore, should be dismissed for lack of standing.  *See Tingley,* 2008 WL 1902108, at *5.

## II.    THE COURT SHOULD DISMISS THIS ACTION BASED ON THE FIRST-FILED *DUTRIAUX* ACTION

Even if Mr. Leyse had standing, the Court nevertheless should dismiss this action based on the "first filed" rule.  The "first filed" rule gives priority to the first filed of two sufficiently related cases absent a showing of convenience favoring the later filed action.  *See Learning Network, Inc. v. Discovery Commc'ns, Inc.*, 11 Fed. Appx. 297, 300-01 (4th Cir. June 7, 2001) (citing *Elliott Mach. Corp. v. Modern Welding Co.*, 502 F.2d 178, 180 n.2 (4th Cir. 1974)).  The rule "has historically been applied in cases where two distinct federal courts have concurrent jurisdiction over actions embracing the same issue, in order to determine the proper venue in which to litigate the dispute."  *SAS Institute, Inc. v. PracticingSmarter, Inc.*, 353 F. Supp. 2d 614, 617 (M.D.N.C. 2005).

---

[12]  *See* Mooney Exs. 1-4, 10; Nelson Ex. 1.

The "first filed" rule is grounded in principles of comity and judicial efficiency. *See, e.g.*, *Charlotte-MecklenBurg Hospital Authority v. Facility Wizard Software, Inc.*, No. 3:08-cv-463-FDW, 2008 WL 5115281, at *1 (W.D.N.C. Dec. 4, 2008). "The concern manifestly is to avoid the waste of duplication, to avoid rulings which may trench upon the authority of sister courts, and to avoid piecemeal resolution of issues that call for a uniform result." *Id.* at *1 (internal quotations omitted). While application of the "first filed" rule is not mechanical, three factors are relevant to the Court's analysis:  (1) the chronological order of the filings in question; (2) the similarities of the parties involved in the two actions; and (3) the similarity of the issues raised in the two cases. *See, e.g.*, *Nutrition & Fitness, Inc. v. Blue Stuff, Inc.*, 264 F. Supp. 2d 357, 360 (W.D.N.C. 2003). Each of the factors weighs heavily in favor of applying the first-filed rule and dismissing this action.

### A.     The *Dutriaux* Action was Filed More Than Four Years Ago and is Still Pending in the Southern District of New York

The *Dutriaux* Action was filed almost four years before this litigation. Moreover, while the *Dutriaux* Action has been pending in the Southern District of New York, discovery has commenced, numerous pleadings and motions have been served and filed, and the Court has become familiar with Ms. Dutriaux's factual allegations and legal theories, as well as with the relevant provisions of the TCPA. (*See* Mooney Exs. 1-4; Mooney ¶ 15.)

Further, the recent administrative closure of the *Dutriaux* Action serves merely administrative purposes, such as allowing the offsite storage of documents and temporary removal of the action from caseload reports. *See* AO Memo (Mooney Ex. 8); *Lehman v. Revolution Portfolio LLC*, 166 F.3d 389, 392 (1st Cir. 1999) ("[A]dministrative closing has no effect other than to remove a case from the court's active docket and permit the transfer of

records associated with the case to an appropriate storage repository.").[13]   The court's administrative closure of the *Dutriaux* Action when it was stayed "is of no legal consequence whatsoever." *Johnson v. Oldcastle Precast, Inc.*, 522 F. Supp. 2d 739, 741 (D. Md. 2007).   It does <u>not</u> constitute a final adjudication or otherwise terminate the case, and Bank of America will promptly renew its motion to dismiss on resolution of the *Holster* appeal.  *See, e.g.*, *Lehman*, 166 F.3d at 392 (administrative closure "did not terminate the underlying case"); *Rapture Shipping Ltd. v. Allround Fuel Trading B.V. Chemoil*, Civ. No. 06-5296-JFK, 2006 WL 2474869, at *1 (S.D.N.Y. Aug. 28, 2005) (administrative closure "was not a substantive dismissal").[14]

### B.   Mr. Leyse's Claim is Based on the Same Telephone Call as Ms. Dutriaux's Claim, and the Putative Class is the Same as in the *Dutriaux* Action

Mr. Leyse purports here to recover for the same allegedly improper telephone call placed to Ms. Dutriaux's line.  (Mooney Exs. 1-4, 10; Nelson Ex. 1.)  Even if more than one recovery could be had for the same call, however, it would be antithetical to judicial efficiency to allow roommates or family members to enforce the private right of action by filing separate actions in different jurisdictions.   Moreover, here Mr. Leyse and other members of the putative class <u>already</u> are members of the putative class in the *Dutriaux* Action, which is the same as in this action:

---

[13]   *See also Rapture Shipping Ltd. v. Allround Fuel Trading B.V. Chemoil*, Civ. No. 06-5296-JFK, 2006 WL 2474869, at *1 (S.D.N.Y. Aug. 28, 2006) ("[A]n administrative closing has no effect other than the removal of all case records to the Closed Records office and, in some instances, to warehouse storage outside of the courthouse." (internal quotations omitted)); *Youngblood v. Citrix Assocs. of New York Cotton Exchange, Inc.*, 99 F.R.D. 570, 571-72 (S.D.N.Y. 1983) ("This statistical closing [pursuant to the AO Memo] has no meaning except for its cosmetic effect upon the computer printouts by which the caseloads of the various district courts are reckoned.").

[14]   As noted above, Plaintiff's New York counsel <u>refused</u> to dismiss the *Dutriaux* Action while he proceeded with the *Holster* and *Bonime* appeals.  (Mooney Ex. 6.)

| *Dutriaux* Action | *Leyse* Action |
|---|---|
| Putative Class:  "[A]ll persons residing in the United States to whom Defendant placed certain telephone calls on a residential telephone line, based on information provided by <u>Equifax Inc. or any of its affiliates</u>, where such telephone calls resulted in a certain type of message being played to the recipients using a prerecorded message. . . ." | Putative Class:  "[A]ll persons residing in the United States to whom Defendant placed certain telephone calls on a residential telephone line, based on information provided by <u>one or more credit-reporting agencies</u>, where such telephone calls resulted in a certain type of message being played to the recipients using a prerecorded message. . . ." |
| (SAC ¶ 24, *Dutriaux* Docket No. 33 (Mooney Ex. 4)) | (Compl. ¶ 23, *Leyse* Docket No. 1 (Mooney Ex. 9)) |

### C.      The Legal and Factual Issues are the Same as in the *Dutriaux* Action

The legal and factual issues raised in the *Dutriaux* Action and this action also are the same.  The Second Amended Complaint in the *Dutriaux* Action and the Complaint in this action are virtually identical.  Both Ms. Dutriaux and Mr. Leyse contend that Bank of America violated the very same provision of the TCPA, and the very same regulation promulgated thereunder.  Both Ms. Dutriaux and Mr. Leyse base their claim on the very same alleged March 11, 2005 telephone call to Ms. Dutriaux's residential telephone line.  Both Ms. Dutriaux and Mr. Leyse seek the very same relief, *i.e.*, statutory damages of $500 (trebled), an injunction against future violations of the TCPA, and the award of attorneys' fees and costs.

Indeed, even the "common questions of law and fact" alleged in support of class action status are the same in both cases:

| *Dutriaux* Action | *Leyse* Action |
|---|---|
| "whether Bank of America placed prerecorded telephone calls to residential telephone lines" | "whether Bank of America placed prerecorded telephone calls to residential telephone lines" |
| "whether the messages contained in the prerecorded calls placed by Bank of America were 'advertisements' under the TCPA" | "whether the prerecorded message made to the telephone number provided in Bank of America's prerecorded identification messages constitutes an advertisement. . . ." |

18

| *Dutriaux* Action | *Leyse* Action |
|---|---|
| "whether Bank of America's prerecorded identification messages were used as a pretext to violate 47 U.S.C.§ 227(b)(1)(B) and 47 C.F.R. § 64.1200(a)(2)" and<br><br>"whether it is possible for a prerecorded identification message to be used as a pretext to violate 47 U.S.C.§ 227(b)(1)(B) and 47 C.F.R. § 64.1200(a)(2)" | "whether Bank of America arranges that, upon a telephone call being to the telephone number in the prerecorded identification message . . . the caller would hear the prerecorded message set forth in paragraph 12 herein; and, if so, whether the foregoing constitutes the use of Bank of America's prerecorded messages as a pretext to violate 47 U.S.C.§ 227(b)(1)(B) and 47 C.F.R. § 64.1200(a)(2)" |
| "whether Bank of America willfully or knowingly violated the TCPA" | "whether Bank of America willfully or knowingly violated the TCPA" |
| "whether the Members of the Class are entitled to damages, and, if so, how much" | "whether the Members of the Class are entitled to damages, and, if so, how much" |
| "whether the Members of the Class are entitled to injunctive relief"<br><br>(SAC ¶ 29, *Dutriaux* Docket No. 33 (Mooney Ex. 4)) | "whether the Members of the Class are entitled to injunctive relief"<br><br>(Compl. ¶ 28, *Leyse* Docket No. 1 (Mooney Ex. 9)) |

Even ignoring the risk of inconsistent judgments and potential prejudice, "for two district courts to supervise discovery, class certification proceedings, summary judgment, and subsequent trial proceedings would be the epitome of judicial waste." *Charlotte-Mecklenburg Hospital Authority*, 2008 WL 5115281, at *1-2. Because each of the relevant factors favors applying the "first filed" rule to give precedence to the *Dutriaux* Action, this action should be dismissed. *See SAS Institute*, 353 F. Supp. 2d at 619; *cf. Rapture Shipping*, 2006 WL 2474869, at *1-*3 (dismissing duplicative action filed after administrative closure of case during stay where later action arose out of the same event and involved the same parties).

## III.   THE COURT SHOULD, IN THE ALTERNATIVE, TRANSFER THIS ACTION TO THE SOUTHERN DISTRICT OF NEW YORK

As demonstrated above, this action should be dismissed based on Mr. Leyse's lack of standing and the "first filed" rule. Alternatively, in the interest of justice, this action should be transferred to the Southern District of New York for consolidation with the *Dutriaux* Action.

19

*See, e.g.*, *Cardoza v. T-Mobile USA Inc.,* No. 08-5120 SC, 2009 WL 723843, at *5-7 (N.D. Cal. Mar. 18, 2009) (transferring putative class action to Western District of Washington where putative class action implicating "common questions at law and fact" already was pending); *Charlotte-Mecklenburg Hospital Authority,* 2008 WL 5115281, at *1-2 (transferring action to Northern District of Illinois where case "revolv[ing] around the same common nucleus of operative fact" already was pending).

Indeed, several of the factors considered under a traditional 28 U.S.C. § 1404(a) analysis also weigh heavily in favor of transferring this action.[15]  As an initial matter, relevant documents and electronically-stored information in this action likely will come from Bank of America's telemarketing vendor DialAmerica Marketing, Inc. ("DialAmerica").   (Nelson  ¶  3.)  DialAmerica, responsible for telemarketing relating to Bank of America's credit card products, is headquartered in New Jersey, a short drive from the Southern District of New York.  (Nelson ¶¶ 2-3; Mooney Ex. 13.)  Thus, the relative ease of access to proof weighs in favor of a transfer. *See, e.g.*, *Volvo Road Machinery, Inc. v. J.D. Evans, Inc.*, Civ. No. 1:08-cv-156, 2008 WL 4610045, at *4 (W.D.N.C. Oct. 16, 2008).

Moreover, the availability of compulsory process for attendance of witnesses and the costs of obtaining attendance of willing witnesses also favor transfer.  DialAmerica is located within the subpoena power of the Southern District of New York; it is not within this Court's subpoena power.  (Nelson ¶¶ 2-3; Mooney Ex. 13.)  The costs of attendance of witnesses from DialAmerica also would be substantially lessened were this action tried a short drive from their

---

[15] This Court traditionally has considered eleven factors in resolving transfer motions. *See, e.g.*, *Auto-Owners Ins. Co. v. Cash*, No. 09cv63, 2009 WL 1563918, at *1 (W.D.N.C. June 1, 2009).  In this case, many of the factors are essentially neutral or irrelevant.  However, several factors set forth above counsel in favor of transfer.

offices.  *See, e.g.*, *Auto-Owners Ins.*, 2009 WL 1563918, at *2 (transferring action where "costs associated with obtaining witnesses for hearing or trials in [transferor court] would be substantial as compared to [transferee court]").

Further, Plaintiff's New York counsel's transparent forum shopping to try to circumvent New York law that would preclude a class action also favors transfer back to New York.  *See, e.g.*¸ *Reiser v. RTI Int'l Metals, Inc.*, 1:08-CV-00729, 2009 WL 1097250, at *1 (S.D. Ohio Apr. 22, 2009) ("[W]here a plaintiff engages in forum-shopping, no deference to the plaintiff's choice of forum is warranted; indeed, federal courts have held that conduct like [that] militates in favor of transfer."); *Italian Colors Restaurant v. American Express Co.*, No. C 03-3719 SI, 2003 WL 22682482, at *3-4 (N.D. Cal. Nov. 10, 2003) (disregarding plaintiff's choice of forum where it appears that plaintiff had engaged in forum shopping).[16]

Ultimately, "to permit a situation in which two cases involving precisely the same issues are simultaneously pending in different District Courts leads to wastefulness of time, energy, and money that § 1404(a) was designed to prevent."  *Continental Grain C. v. Barge FBL*-585, 364 U.S. 19, 26 (1960).  *See also Alke v. L.B. White Co.*, Civ. No. 3:08-cv-88-C, 2008 WL 2447357, at *4 (W.D.N.C. June 13, 2008) ("[n]one of the factors weigh in favor of dual litigation of identical issues, which would be not only a waste of limited judicial resources, but would also create a risk of contrary decisions in the two districts.").

---

[16]  Even ignoring the blatant forum shopping, Plaintiff's choice of forum should be afforded little weight given that Plaintiff seeks to certify a nationwide class.  *See Eichenholz v. Brennan*, 677 F. Supp. 198, 202 (S.D.N.Y. 1988) (citing *Koster v. Lumbermens Mut. Casualty Co.*, 330 U.S. 518, 524 (1947)).

## IV.   THE COURT SHOULD AWARD BANK OF AMERICA THE ATTORNEYS' FEES AND COSTS INCURRED IN CONNECTION WITH THIS MOTION

This Court has the inherent authority to sanction parties and may, for example, award attorneys' fees "when a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Chambers v. Naseo, Inc.*, 501 U.S. 32, 45-46 (1991).  *See also Stag v. Board of Trustees*, 55 F.3d 943, 955 (4th Cir. 1995).  In addition, pursuant to 28 U.S.C. § 1927, "[a]ny attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses and attorneys' fees incurred because of such conduct."  Movant must establish three factors for relief under Section 1927: "(1) a multiplication of proceedings by an attorney; (2) conduct that can be characterized as unreasonable and vexatious; and (3) a resulting increase in the cost of the proceedings." *Chosin Few, Inc. v. Scott*, 209 F. Supp. 2d 593, 602 (W.D.N.C. 2002).  The Court should award Bank of America the attorneys' fees and costs incurred in connection with this motion under both its inherent authority and 28 U.S.C. § 1927.

First, Plaintiff's New York counsel and Plaintiff have knowingly and willfully multiplied the proceedings by commencing this action based on the same legal claim and same underlying telephone call already at issue in the *Dutriaux* Action, and by refusing to dismiss this action.

Second, Plaintiff's New York counsel and Plaintiff's conduct is unreasonable and undertaken in bad faith.  Messrs. Bank and Leyse clearly did not instigate this action hundreds of miles from Mr. Leyse's residence to vindicate Mr. Leyse's alleged rights based on a telephone call made more than four years ago.  Rather, Mr. Bank commenced this action to attempt to circumvent the application of N.Y.C.P.L.R. § 901(b) which will preclude Ms. Dutriaux from continuing with her putative TCPA class in the Southern District of New York.  Tellingly, Plaintiff's North Carolina counsel sought to withdraw after Bank of America informed him that

the *Dutriaux* Action was pending, and Plaintiff's New York counsel still has not been able to retain any substitute North Carolina counsel to represent Plaintiff.

Third, Bank of America has been forced to incur substantial additional and unnecessary costs in connection with this baseless litigation.  Plaintiff's New York counsel has refused to dismiss the litigation despite Bank of America's reasonable good faith request, North Carolina counsel's effort to withdraw, Plaintiff's failure to find any substitute North Carolina counsel, and the Court's denial of Plaintiff's New York counsel's motion for Special Admission to continue without North Carolina Counsel.  (Docket No. 17.)

Simply put, Plaintiff's New York counsel and Plaintiff should be held fully accountable and deterred from continuing to try to use the federal courts for improper purposes.  They should be held jointly liable for the attorneys' fees and costs incurred by Bank of America.  *See Salvin v. American National Insurance Co.*, 281 Fed. Appx. 222, 226, 2008 WL 2369095, at *3 (4th Cir. June 10, 2008).[17]

---

[17]  Should the Court find that Bank of America is entitled to attorneys' fees and costs under 28 U.S.C. § 1927 or the Court's inherent authority, Bank of America promptly will submit documentation of the relevant fees and costs incurred through entry of the Court's order.

## <u>CONCLUSION</u>

For all of the foregoing reasons, Bank of America requests that the Court dismiss this action or, in the alternative, transfer this action to the Southern District of New York, and award Bank of America's attorneys' fees and costs, and grant whatever other and further relief the Court deems just and proper.

    /s/Amy Pritchard Williams
**K&L GATES, LLP**
Amy Pritchard Williams
North Carolina State Bar No. 19233
Hearst Tower, 47th Floor
214 North Tryon Street
Charlotte, North Carolina 28202
Telephone: (704) 331-7400
Facsimile: (704) 353-3129
E-mail: amy.williams@klgates.com

**OF COUNSEL**

**K&L GATES, LLP**
Hearst Tower, 47th Floor
214 North Tryon Street
Charlotte, North Carolina  28202
Telephone:  (704) 331-7400

    /s/ Mark P. Ladner
**MORRISON & FOERSTER LLP**
Mark P. Ladner
N.Y. Bar Registration No. 1084409
Kyle W. K. Mooney
N.Y. Bar Registration No. 3970639
1290 Avenue of the Americas
New York, New York 10104-0050
Tel:  (212) 468-8000
Fax: (212) 468-7900
E-mail: mladner@mofo.com
E-mail:  kmooney@mofo.com

Attorneys for Bank of America, National Association

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the within **DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS OR TRANSFER THIS ACTION, AND TO AWARD BANK OF AMERICA'S ATTORNEYS' FEES AND COSTS** was electronically filed with the Clerk of the United States District Court for the Western District of North Carolina by using the CM/ECF system, which will automatically send notification of such filing to the following:

> Gary W. Jackson
> Jackson & McGee, LLP
> 521 East Blvd.
> Charlotte , NC 28203
> *Attorney for Plaintiff*

> Todd C. Bank
> 119-40 Union Turnpike
> Fourth Floor
> Kew Gardens, NY  11415
> *Attorney for Plaintiff*

This the 22nd day of July, 2009

/s/ Amy Pritchard Williams