# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF NORTH CAROLINA

MARK LEYSE and All Others Similarly Situated,

        *Plaintiffs,*

-against-

BANK OF AMERICA, NATIONAL ASSOCIATION,

        *Defendant.*

3:09-00097-RJC-DLH

:
:
:
:
:
:
:
:
:
:
:

---

## PLAINTIFF'S MEMORANDUM OF LAW
## IN OPPOSITION TO DEFENDANT'S MOTION
## TO DISMISS OR TRANSFER THIS ACTION

MARK LEYSE
Plaintiff *Pro Se*
P.O. Box 1314
New York, NY 10025

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ............................................... iii

INTRODUCTION ........................................................ 1

FACTUAL AND PROCEDURAL BACKGROUND ................................... 1

ARGUMENT ............................................................ 4

I.  PLAINTIFF HAS STANDING .......................................... 4

    A.  Standing to Make a Claim Based on a Violative
        Call Is Contingent Upon Residency ........................... 4

    B.  Standing to Make a Claim Based on a Violative Call Is Not
        Contingent Upon Whether One is the Intended Recipient of the Call .......... 8

    C.  Plaintiff Has Standing to Seek Injunctive Relief ........................... 9

II. THIS ACTION MAY NOT BE DISMISSED
    BASED ON THE FIRST-FILED RULE .................................. 10

    A.  Because, Under Currently Binding Case Law, Plaintiff Would Not Be
        Able to Establish Subject-Matter Jurisdiction in the Southern District
        of New York, the First-Filed Rule Is Inapplicable in the Present Action ...... 10

    B.  This Court Could Stay the Present Action Pending the
        Supreme Court's Final Resolution of *Holster v. Gatco,
        Inc.*, 2008 U.S. App. Lexis 23203 (2d Cir. Oct. 31, 2008)
        (*cert.* pet. pending, No. 08-1307), and/or the Supreme
        Court's Opinion in *Shady Grove Orthopedic Assocs., P.A.
        v. Allstate Ins.Co.*, 549 F.3d 137 (2d Cir. 2008), *cert.
        granted*, 2009 U.S. Lexis 3340 (U.S. May 4, 2009) ..................... 12

    C.  In the *Dutriaux* Action, There Was Minimal Discovery; Nor
        Was There a Single Substantive Decision Issued by the Court .............. 15

    D.  There are Key Differences Between the Legal Issues in the
        Present Action and the Legal Issues in the *Dutriaux* Action ............... 16

i

III. THIS ACTION MAY NOT BE TRANSFERRED TO
THE SOUTHERN DISTRICT OF NEW YORK . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

    A.    Because, Under Currently Binding Case Law, Plaintiff
Would Not Be Able to Establish Subject-Matter Jurisdiction
in the Southern District of New York, the Present Action
Is Not Subject to Transfer Under 28 U.S.C. § 1404(a) . . . . . . . . . . . . . . . . . . 17

    B.    Defendant Has Not Met Its Burden Under 28 U.S.C. § 1404(a) . . . . . . . . . . . 18

    C.    Plaintiff Had the Right to Choose a Court in Which He Could
Avail Himself of Rule 23 of the Federal Rules of Civil Procedure . . . . . . . . . . 19

IV    PLAINTIFF IS ENTITLED TO ACT PRO SE

    A.    Plaintiff Is Not Required to be Represented by Counsel
at Least Until the Class-Certification Stage of this Action . . . . . . . . . . . . . . . . 22

    B.    The Drafting of this Brief by Plaintiff's
New York Counsel Was Entirely Proper . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

# TABLE OF AUTHORITIES

**Page**

**CASES**

*American Cas. Co. v. Filco,*
  2005 U.S. Dist. LEXIS 3064 (N.D. Ill. Jan. 19, 2005) . . . . . . . . . . . . . . . . . . . . . . . . . 18

*BE & K Constr. v. NLRB,*
  536 U.S. 516 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Board of Trustees v. Fox,*
492 U.S. 469 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Bonime v. Avaya,*
  547 F.3d 497 (2d Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . 10, 11, 12, 14, 15, 16, 17

*Buckley v. American Constitutional Law Foundation, Inc.,*
  525 U.S. 182 (1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*Casana Furniture Co. v. Coaster Co. of America,*
  2009 U.S. Dist. LEXIS 23141 (M.D.N.C. Mar. 24, 2009) . . . . . . . . . . . . . . . . . . 10, 19

*Century Furniture, LLC v. C & C Imports, Inc.,*
  2007 U.S. Dist. LEXIS 68343 (W.D.N.C. Sept. 14, 2007) . . . . . . . . . . . . . . . . . . . . . 18

*Charvat v. AT&T,*
  1999 TCPA Rep. 1005 (Ohio Comm. Pls. Nov. 30, 1999) . . . . . . . . . . . . . . . . . . 4, 5, 6

*Church of the American Knights of the Ku Klux Klan v. Kerik,*
  356 F.3d 197 (2d Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*Commercial Equipment Co. v. Barclay Furniture Co.,*
  738 F. Supp. 974 (W.D.N.C. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 19

*Dawson v. American Dream Home Loans,*
  2006 WL 2987104 (Ohio Comm. Pls. Oct. 4, 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Deposit Guaranty Nat'l Bank v. Roper,*
  445 U.S. 326 (1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Doe 2 v. Ortho-Clinical Diagnostics, Inc.,*
  335 F. Supp. 2d 614 (M.D.N.C. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Erie R.R. v. Tompkins,*
  304 U.S. 64 (1938) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 20

**CASES** (cont'd)

*Foxhall Realty Law Offices, Inc. v.*
*Telecomm. Premium Svcs., Ltd.,*
    156 F.3d 432 (2d Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 14

*Gibson v. Chrysler Corp.,*
    261 F.3d 927 (9th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22, 23

*Gottlieb v. Carnival Corp.,*
    436 F.3d 335 (2d Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 15

*H.L. Green Co. v. MacMahon,*
    312 F.2d 650, 652 (2d Cir. 1962) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19-20

*Hanna v. Plumer,*
    380 U.S. 460 (1965) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Holster v. Gatco, Inc.,*
    2008 U.S. App. Lexis 23203 (2d Cir. Oct. 31, 2008)
    (*cert.* pet. pending, No. 08-1307) . . . . . . . . . . . . . . . . . . . . . . . . . 11, 12, 13, 15, 16

*Iragorri v. United Techs. Corp.,*
    274 F.3d 65 (2d Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Int'l Science & Tech. Inst., Inc. v. Inacom Communs., Inc.,*
    106 F.3d 1146 (4th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 14

*Jemiola v. XYZ Corp.,*
    802 N.E.2d 745 (Ohio Cmm. Pls. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 4

*Kopff v. World Research Group, LLC,*
    568 F. Supp. 2d 39 (D.D.C. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8

*KyTEL Int'l Group, Inc. v. Rent-A-Center, Inc.,*
    43 Fed. Appx. 420 (2d Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Leckler v. Cashcall, Inc.,*
    554 F. Supp. 2d 1025 (N.D. Cal. 2008), *vacated on other grounds,*
    2008 U.S. Dist. LEXIS 97439 (N.D. Cal. Nov. 21, 2008) . . . . . . . . . . . . . . . . . . . . . . 3

*Lewis v. Gitt,*
    1998 U.S. Dist. LEXIS 9186 (E.D. Pa. June 22, 1998) . . . . . . . . . . . . . . . . . . . . . . . 5

**CASES** (cont'd)

*Logue v. Nissan North America, Inc.*,
2008 U.S. Dist. LEXIS 64937 (W.D. Tenn. July 30, 2008) . . . . . . . . . . . . . . . . . 20, 21

*Margulis v. P&M Consulting, Inc.*,
121 S.W.3d 246 (Mo. App. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 9

*Marietta Drapery & Window Coverings Co. v. N. River Ins. Co.*,
486 F. Supp. 2d 1366 (N.D. Ga. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Miles v. Ill. Cent. R.R. Co.*,
315 U.S. 698 (1942) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Morlan v. Universal Guar. Life Ins. Co.*,
298 F.3d 609 (7th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Myers v. Loudon Co. Pub. Schools*,
418 F.3d 395 (4th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Northwest Airlines, Inc. v. American Airlines, Inc.*,
989 F.2d 1002 (8th Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*O'Charley's Mgmt. Co. v. Darden Concepts, Inc.*,
2007 U.S. Dist. LEXIS 46208 (M.D. Tenn. June 25, 2007) . . . . . . . . . . . . . . . . . 19

*Rudgayzer & Gratt v. LRS Communications, Inc.*,
776 N.Y.S.2d 158 (N.Y. Civ. Ct. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Rudgayzer & Gratt v. LRS Communications, Inc.*,
789 N.Y.S.2d 601 (N.Y. App. Term 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Shady Grove Orthopedic Associates, P.A. v. Allstate Ins. Co.*,
549 F.3d 137 (2d Cir. 2008), *cert. granted*,
2009 U.S. LEXIS 3340 (U.S. May 4, 2009) . . . . . . . . . . . . . . . . . . . . . . 12, 13, 14, 15

*Talley v. California*,
362 U.S. 60 (1960) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*Taylor v. UPS, Inc.*,
554 F.3d 510 (5th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*The Daniel Co. of Springfield v. Fax.com, Inc.*,
2004 WL 5460694 (Mo. Cir. Feb. 19, 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

**CASES** (cont'd)

*United Mine Workers v. Ill. State Bar Ass'n,*
389 U.S. 217 (1967) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23, 24

*United States v. County of Arlington,*
669 F.2d 925 (4th Cir. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Uyeda v. J.A. Cambece Law Office, P.C.,*
2005 U.S. Dist. LEXIS 9271 (N.D. Cal. May 16, 2005) . . . . . . . . . . . . . . . . . . . . . . 23

*Walker v. Suburban Hosp. Ass'n,*
1991 U.S. App. LEXIS 4049 (4th Cir. Mar. 13, 1991) . . . . . . . . . . . . . . . . . . . . . 24

*Weber v. U.S. Sterling Securities, Inc.,*
924 A.2d 816 (Conn. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Williford v. Armstrong World Indus., Inc.,*
715 F.2d 124 (4th Cir. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

**FEDERAL STATUTES**

28 U.S.C. § 1332(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

28 U.S.C. § 1332(d)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

28 U.S.C. § 1404(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10,17, 18, 19

47 U.S.C. § 227. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

47 U.S.C. § 227(a)(4) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

47 U.S.C. § 227(a)(5) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

47 U.S.C. § 227(b)(1)(B) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 3, 6, 9

47 U.S.C. § 227(b)(1)(C). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 6, 7

47 U.S.C. § 227(b)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 13, 14, 17

47 U.S.C. § 227(c)(5) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5

Fed. R. Civ. P. 23 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19, 20, 23

**FEDERAL STATUTES** (cont'd)

Fed. R. Civ. P. 23(a) ...................................................... 23

Fed. R. Civ. P. 23(b) ...................................................... 23


**FEDERAL REGULATIONS**

47 C.F.R. § 64.1200(a)(2)(ii) ................................................ 1

47 C.F.R. § 64.1200(a)(2)(iii) ............................................... 1

47 C.F.R. § 64.1200(a)(6) ................................................ 2, 9


**FEDERAL REGULATORY AUTHORITIES**

*Report and Order In the Matter of Rules and Regulations*
*Implementing the Telephone Consumer Protection Act of 1991*,
1992 WL 690928, 7 F.C.C. 8,752 (Sept. 17, 1992) ............................. 7, 9

*Report and Order In the Matter of Rules and Regulations*
*Implementing the Telephone Consumer Protection Act of 1991*,
2003 WL 21517853, 18 F.C.C. 14,014 (July 3, 2003) ........................... 3


**STATE STATUTES**

N.Y. CPLR § 901(b) ............................... 11, 13, 14, 15, 16, 17, 21, 22

N.C. Gen. Stat. § 84-4 .................................................. 23, 25

N.C. Gen. Stat. § 84-4-2.1 ................................................ 23

**OTHER AUTHORITIES**

Erwin Chemerinsky,
*Federal Jurisdiction* (Aspen Law & Bus. 4th ed. 2003) ......................... 20

Charles Alan Wright *et. al.*,
*Federal Practice and Procedure: Civil 3d* (3d ed. 2005) ......................... 20

## INTRODUCTION

Plaintiff, Mark Leyse, submits this Memorandum of Law in opposition to the motion of Defendant, Bank of America, National Association, to dismiss or transfer this action.

## FACTUAL AND PROCEDURAL BACKGROUND

This action was commenced on March 10, 2009, and arises out of Defendant's violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA"). Specifically, Defendant violated 47 U.S.C. § 227(b)(1)(B), which provides that "it shall be unlawful . . . to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party" (such calls are hereinafter referred to as "unsolicited prerecorded telephone calls").

Under regulations of the Federal Communications Commission ("FCC"), the prohibition against unsolicited prerecorded telephone calls does not apply to (1) calls that are "not made for a commercial purpose," 47 C.F.R. § 64.1200(a)(2)(ii), or (2) calls that *are* "made for a commercial purpose but do[] not include or introduce an *unsolicited advertisement* or constitute a *telephone solicitation.*" 47 C.F.R. § 64.1200(a)(2)(iii) (emphases added). Under the TCPA, "'unsolicited advertisement' means any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without that person's prior express invitation or permission, in writing or otherwise," 47 U.S.C. § 227(a)(5); and "'telephone solicitation' means the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person, but such term does not include a call or message (A) to any person with that person's prior express invitation or permission, (B) to any person with whom the caller has an established business relationship, or (C) by a tax exempt nonprofit organization." 47 U.S.C. § 227(a)(4).

On or about March 11, 2005, Defendant called Plaintiff's residential telephone number in order to advertise the commercial availability of Defendant's goods and services, *i.e.*, Defendant's "Bank of America Credit Card." *See* Compl., ¶¶ 9, 12. Upon that call being answered, Defendant played a prerecorded message containing the information set forth in 47 C.F.R. § 64.1200(a)(6) ("Abandoned Call Regulation"), under which one may not "[a]bandon more than three percent of all telemarketing calls that are answered live by a person." *Id.* An abandoned call is a call that "is not connected to a live sales representative within two (2) seconds of the called person's completed greeting." *Id.* Moreover, "[w]henever a sales representative is not available to speak with the person answering the call, that person must receive, within two (2) seconds after the called person's completed greeting, a *prerecorded identification message* that states only the name and telephone number of the business, entity, or individual on whose behalf the call was placed, and that the call was for 'telemarketing purposes.'" *Id.* (emphasis added). Finally, "[t]he telephone number so provided must permit any individual to make a do- not- call request during regular business hours for the duration of the telemarketing campaign [and] [t]he telephone number may not be a 900 number or any other number for which charges exceed local or long distance transmission charges." *Id.*

Upon receiving calls to the telephone number that was included in Defendant's prerecorded identification message ("PIM"), *i.e.*, calls that were made pursuant to the caller's right under the Abandoned Call Regulation to make a do-not-call request, Defendant engaged in conduct that it was prohibited from engaging in during its initial calls; namely, playing a prerecorded message advertising the commercial availability of Defendant's goods and services, *i.e.*, Defendant's "Bank of America Credit Card." *See* Compl., ¶ 12. Specifically, Defendant, upon receiving calls to the telephone number that was included in the PIM, played a prerecorded message that included the following items: (1) reference to "the Bank of America Credit Card," *see* Compl., ¶ 12(i); and (2) an invitation to

2

"complete your request for a Bank of America Credit Card [by] press[ing] 3." Compl., ¶ 12(iv).

There is no question that the PIM would have violated the prohibition against unsolicited prerecorded telephone calls if it had included items (1) or (2). *See Report and Order In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 2003 WL 21517853 at *75, ¶ 155, n.554, ¶ 142 (July 3, 2003) ("2003 TCPA Order") ("even an incidental reference to a product or service could transform the [PIM] into a prohibited unsolicited advertisement."). While Defendant's PIM itself did not include items (1) or (2), the foregoing shows that Defendant used its PIM as a means of exposing, to those who returned Defendant's calls, items (1) and (2). Such conduct is precisely what the FCC has stated as being prohibited: "[i]f [a] call is intended to offer property, goods, or services for sale . . . in the future (*such as in response to a message that provides a toll-free number*), that call is an *advertisement*." 2003 TCPA Order, 2003 WL 21517853 at *49, ¶ 142 (emphases added). The FCC refers to such calls as "so-called 'dual purpose' calls," *id.*, because they are ostensibly made for a lawful purpose when, in fact, they are made, as were Defendant's calls, in order to evade the TCPA. Thus, as the FCC's opinion, as well as common sense, makes clear, one who calls a telephone number that is included in a PIM cannot be said to have given his "express consent," 47 U.S.C. § 227(b)(1)(B), to listen to prerecorded advertising material. *See also Leckler v. Cashcall, Inc.*, 554 F. Supp. 2d 1025, 1030 (N.D. Cal. 2008), *vacated on other grounds*, 2008 U.S. Dist. LEXIS 97439 (N.D. Cal. Nov. 21, 2008) ("the called party must expressly consent not only to receiving telephone calls, but to receiving calls made by a caller using . . . [a] prerecorded message."); *Jemiola v. XYZ Corp.*, 802 N.E.2d 745, 748 (Ohio Cmm. Pls. 2003) (holding, with respect to the TCPA's prohibition against the sending of unsolicited advertisements to fax machines, *see* 47 U.S.C. § 227(b)(1)(C), that "[f]or consent to send fax advertisements to be valid . . ., the recipient must be expressly told that the materials to be sent are

advertising materials and will be sent by fax.").

In sum, Defendant used its PIM as a ruse to evade the statutory prohibition against unsolicited prerecorded calls, and thus violated the prohibition whether or not the recipient called the telephone number in the PIM (Defendant's assertion that the second amended complaint in the *Dutriaux* action alleged that Ms. Dutriaux returned Defendant's call, *see* Def. Mem. at 6, is incorrect).

**ARGUMENT**

**POINT I**

**PLAINTIFF HAS STANDING**

**A.    Standing to Make a Claim Based on a Violative Call Is Contingent Upon Residency**

Defendant contends that Plaintiff lacks standing because he was not the "subscriber" to the telephone number to which Defendant made the telemarketing call that gave rise to Plaintiff's claim. *See* Def. Mem. at 12-15. However, this precise contention was squarely rejected in *Charvat v. AT&T*, 1999 TCPA Rep. 1005 (Ohio Comm. Pls. Nov. 30, 1999) (TCPA Reporter cases, like Westlaw and Lexis cases, are available at www.tcpalaw.com at no charge to judges and their law clerks; for the Court's convenience, however, a copy of *Charvat* is annexed to the Declaration of Todd C. Bank as Exh. "A"). In *Charvat*, the plaintiff brought TCPA claims for violations of regulations enacted pursuant to 47 U.S.C. § 227(c)(1), which confers authority upon the FCC to enact regulations that "protect *residential telephone subscribers*' privacy rights to avoid receiving telephone solicitations to which they object" (emphasis added).

In relevant part, 47 U.S.C. § 227(b)(3), which creates the private right of action that Plaintiff pursues here, is identical to 47 U.S.C. § 227(c)(5), which creates the private right of action, at issue in *Charvat*, for violations of the aforementioned FCC regulations; *i.e.*, 47 U.S.C. § 227(b)(3) confers a private right of action upon "[a] *person* or entity" (emphasis added), while 47 U.S.C. § 227(c)(5)

confers a private right of action upon "[a] *person*" (emphasis added). Thus, neither provision refers to named telephone subscribers.

In *Charvat*, the court noted, with respect to the regulations at issue there:

> 47 C.F.R. § 64.1200(e) states that "no person or entity shall initiate any telephone solicitation to a *residential telephone subscriber*." (Emphasis Added). Furthermore, 47 C.F.R. § 64.1200(e)(iii) provides that a person or entity, who receives a request from a *residential telephone subscriber* not to receive calls from that person or entity, shall record the do-not-call request and place the *subscriber's* name and telephone number on the do-not-call list at the time that the request is made.

*Charvat*, 1999 TCPA Rep. 1005 at *5 (all emphases in original). The court proceeded to explain its rejection of the defendant's argument regarding standing:

> Initially, the Court notes that "residential telephone subscriber" as referred to in 47 C.F.R. § 64.1200(e) does, in fact, modify the word "person" used in 47 U.S.C. § 227(c)(5). The Court does not, however, accept Defendants' restricted definition of individuals who fall within the category of "residential telephone subscribers." As properly stated by Plaintiff, *there is no language in the statutory history of the TCPA, or in the FCC regulations or official interpretations, that mandates that a [Do-Not-Call] request be made by, or a suit under TCPA be filed by, the person to whom the billing statement for telephone services is sent*. The purpose of TCPA is "to protect residential telephone subscriber privacy rights by restricting certain commercial solicitation and advertising uses of the telephone and related telecommunications equipment." *Lewis v. Gitt*, 1998 U.S. Dist. LEXIS 9186 (June 22, 1998) Civil Action 97-7216 (E. Dist. PA), unreported, *citing* H.R. Rep. No.102-317 at 5, reprinted in 14082 U.S. Congressional Serial Set, 102d Gong. 1st Sess. 1991. The TCPA was designed "to return a measure of control to both individual residential telephone *customers* and owners of facsimile machines." *Id.* (Emphasis Added). Although Mrs. Sandra Charvat . . . initiated the telephone service for (614) [xxx]-1351, and is the person whose name appears on the billing statement, she is not the only individual whose privacy rights are protected under the TCPA. *Mr. Charvat is also a resident of the household to which the (614) [xxx]-1351 telephone line provides service, therefore, he too is entitled to the privacy protection provided under TCPA.* Mr. Charvat's privacy is affected by telephone solicitations to the (614) [xxx]-1351 telephone number, and *he therefore has standing to assert the TCPA violations.*

> FN2: . . . The TCPA does not support that Mr. Charvat should be
> denied his privacy because he is not the person to whom the bill for
> (614) [xxx]-1351 is sent. The implications of Plaintiff's suggested
> statutory interpretation are not consistent with the purpose of the
> TCPA. . . . Defendants attribute too much significance to the fact that
> only Mrs. Charvat is listed on the billing statement, as this is common
> billing procedure. Furthermore, although the account for (614) [xxx]-
> 1351 is listed in Mrs. Charvat's name, it is likely that Mr. Charvat also
> shares the financial responsibility for the telephone bill. As such, Mr.
> Charvat's privacy interest should also be recognized and upheld under
> TCPA.

*Charvat*, 1999 TCPA Rep. 1005 at *5-*8 (emphases added). Courts have likewise held, with respect

to the TCPA's prohibition against the sending of unsolicited advertisements to fax machines, *see* 47

U.S.C. § 227(b)(1)(C), that one's standing does not require ownership of, or payment for, either the

telephone line or the fax machine. *See, e.g., Dawson v. American Dream Home Loans*, 2006 WL

2987104 at *4 (Ohio Comm. Pls. Oct. 4, 2006).

More than *Charvat* merely being on point, there is an even stronger basis in the present case

upon which to reject the argument that standing is limited to the person who is billed for the

telephone line at issue, for the prohibition at issue here concerns calls made to "residential telephone

*lines*," 47 U.S.C. § 227(b)(1)(B) (emphasis added), not, as in *Charvat*, to "residential telephone

*subscribers*." 47 U.S.C. § 227(c)(1) (emphasis added). In addition, 47 U.S.C. § 227(b)(1)(B) refers

to calls made to "the *called party*" (emphasis added), rather than to calls made, as in *Charvat*, to "a

*residential telephone subscriber*." 47 C.F.R. § 64.1200(e) [now (d)] (emphasis added).

Defendant's position necessarily implies that, if one were to make a prerecorded telephone

call to a person's residence after that person gave his express consent to receive the call, the caller

would nevertheless be liable to the named subscriber if the named subscriber were someone other than

the person who had consented to receiving the call. In fact, Defendant makes this precise argument:

"[i]t clearly is the <u>subscriber</u> of the telephone line that may *provide (or withhold) consent* to initiate

the call." Def. Mem. at 13 (underlined emphasis in original; other emphases added). *See also* Def. Mem. at 13 (repeating this argument with respect to 47 C.F.R. § 64.1200(a)(2), which exempts calls "made to any person with whom the caller has an established business relationship at the time of the call."). Thus, according to Defendant's argument, a business that is given express consent to place prerecorded calls to a person's residence would either have to obtain evidence that that person is the named telephone subscriber, or risk being sued by the named subscriber. Defendant's position also necessarily implies that a defendant in such a case would be able to implead the very person who had consented to receiving the call in the first place, *i.e.*, the named subscriber's spouse, roommate, etc. Alas, Defendant's position clearly contradicts not only common sense, but also the FCC's finding that "the legislative history indicates that the TCPA does not intend to unduly interfere with ongoing business relationships." *Report and Order In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 1992 WL 690928 at *12, 7 F.C.C. 8,752, 8770, ¶ 34, and FN62, citing House Report, 102-317, 102d Cong., 1st Session (1991), p. 13 (Sept. 17, 1992) ("1992 TCPA Order"). One can easily imagine the kind of gamesmanship that Defendant, in the *Dutriaux* action, would have accused Ms. Dutriaux and/or Mr. Leyse of engaging in if Mr. Leyse had given Defendant express permission to call his residence while Ms. Dutriaux then claimed that Defendant was liable to her because Mr. Leyse did not have that right.

The case of *Kopff v. World Research Group, LLC*, 568 F. Supp. 2d 39 (D.D.C. 2008), upon which Defendant relies in support of its contention that Plaintiff lacks standing, *see* Def. Mem. at 14, is inapposite. In *Kopff*, a husband and wife brought TCPA claims based on the statute's prohibition against the sending of unsolicited advertisements to fax machines. *See id.* at 42, citing 47 U.S.C. § 227(b)(1)(C). The court noted that "[t]he faxes were addressed to Mr. Kopff, as President of Heritage Management Ltd. . . . and were sent to the fax number listed on Heritage's letterhead." *Id.*

7

at 41 (internal quotation marks and citation omitted). *See also id.* at 42 ("[t]he faxes at issue in this case were sent to Gary Kopff, by name, and not a single fax was sent to Judy Kopff. While Judy Kopff worked as her husband's assistant, the faxes were addressed to him" (citation omitted)). Based on these facts, the court held that "Judy Kopff lacks standing to pursue the claims in this case." *Id.* at 42. In the present case, Defendant does not, and cannot, claim that the calls at issue were directed to anyone by name. As the *Kopff* court itself explained, "[w]hile the Court might think otherwise were the faxes addressed generically -- *e.g.* to Employee of Heritage Management' -- or were they not addressed at all, in a case like this one where there is a specific, existing addressee such as Gary Kopff, the Court is persuaded that the TCPA cause of action is his, and not his staff's, regardless of the fact that the 'staff' in this case is his wife." *Id.* at 42.

Finally, Defendant argues that Plaintiff lacks standing because he "fails to allege that he answered the call, or that the prerecorded message was left on an answering device owned by him." Def. Mem. at 14. First, as set forth above, the receipt of an unlawful call at one's residence, regardless of whether he is the named telephone subscriber, gives rise to a cause of action; thus, just as one need not be the named subscriber to, or "own," the telephone number at issue, one need not be the owner of an answering machine in the case of a message being left on one. Second, Defendant is incorrect in contending that a call that results in a message being played to a live recipient confers standing only on that recipient. Again, the placement of a call *to one's residence* confers standing.

## B.     Standing to Make a Claim Based on a Violative Call Is Not Contingent Upon Whether One is the Intended Recipient of the Call

Defendant contends that "Mr. Leyse [has] also fail[ed] to allege that he was the 'called party,' *i.e.*, the intended recipient of the call," Def. Mem. at 14. In addition to Defendant's contention being irrelevant for the reasons set forth in Point I.A, *supra, Margulis v. P&M Consulting, Inc.*, 121 S.W.3d 246 (Mo. App. 2003), is on point. There, the plaintiff, like in the present case, brought an

action for a violation of 47 U.S.C. § 227(b)(1)(B). The defendant in *Margulis* argued that the plaintiff lacked standing because "the person who received the call placed to Margulis' telephone number was not Margulis, but her husband." *Margulis*, 121 S.W.3d at 248. The court rejected the defendant's argument, concluding, just as Plaintiff has set forth in Point I.A, *supra*, that "[n]o language in the statute limits the private right of action only to individuals actually receiving the call. The statute is violated by the placing of the call to a *residence*." *Id.* at 249, citing 47 U.S.C. Section 227(b)(1)(B), and 1992 TCPA Order, 1992 WL 690928 at *1, 7 F.C.C.R. at 8753 (emphasis in original). Thus, the court explained, "it is immaterial whether Margulis was the person who received the call." *Id.*

Defendant also contends that Plaintiff "fails to allege . . . that anything in the prerecorded message possibly could have led Mr. Leyse to believe th[at] he was expected to <u>return</u> the call—a call that the message clearly indicated was made for 'telemarketing purposes.'" Def. Mem. at 14-15, citing Compl. ¶ 10, and 47 C.F.R. § 64.1200(a)(6) (underlined emphasis in original).

Defendant is correct that one who receives a PIM is not *required* to return the call. This, however, does not change the fact that Defendant violated the prohibition against making unsolicited prerecorded calls by trying to evade that prohibition, as set forth in Point I.A, *supra*.

## C.    Plaintiff Has Standing to Seek Injunctive Relief

Defendant contends that "Mr. Leyse cannot properly seek to enjoin telephone calls to Ms. Dutriaux's residential telephone line." Def. Mem. at 15. However, for the same reasons that Plaintiff has standing to seek statutory damages, *see* Points I.A, B, and C, *supra*, he also has standing to seek to enjoin Defendant from calling him at his residence, because such an injunction would not be a common-law injunction but, rather, a statutory injunction, for which one's entitlement depends merely upon showing that his statutory rights were violated. *See The Daniel Co. of Springfield v. Fax.com, Inc.*, 2004 WL 5460694 at *1 (Mo. Cir. Feb. 19, 2004).

**THIS ACTION MAY NOT BE DISMISSED BASED ON THE FIRST-FILED RULE**

A.    **Because, Under Currently Binding Case Law, Plaintiff Would Not Be
       Able to Establish Subject-Matter Jurisdiction in the Southern District
       of New York, the First-Filed Rule Is Inapplicable in the Present Action**

Defendant contends that "[e]ven if Mr. Leyse had standing, the Court nevertheless should dismiss this action based on the 'first filed' rule." Def. Mem. at 15. The first-filed rule "has nothing to do with the merits of the underlying controversy and is simply whether, as between two courts both having *jurisdiction* over the parties *and the subject matter* of the dispute, the court in which jurisdiction first attached should proceed to adjudicate the controversy and should restrain the parties from proceeding with the later-filed action." *Northwest Airlines, Inc. v. American Airlines, Inc.*, 989 F.2d 1002, 1004 (8th Cir. 1993). *See also Marietta Drapery & Window Coverings Co. v. N. River Ins. Co.*, 486 F. Supp. 2d 1366 (N.D. Ga. 2007) (explaining that "[t]he first-filed rule . . . is, in essence, a rule of venue." *Id.* at 1368, n.2, citing *Northwest Airlines*, 989 F.2d at 1006, and *KyTEL Int'l Group, Inc. v. Rent-A-Center, Inc.*, 43 Fed. Appx. 420, 421 (2d Cir. 2002); *see also Casana Furniture Co. v. Coaster Co. of America*, 2009 U.S. Dist. LEXIS 23141 at *5 (M.D.N.C. Mar. 24, 2009) ("[t]he first step for this court in assessing whether a transfer [under 28 U.S.C. § 1404(a)] is appropriate is determining whether the transferee court is one which the action could have been brought originally; in other words, *whether the transferee court has subject matter jurisdiction over the action*, whether venue is proper there, and whether the defendant is amenable to process issuing out of transferee court" (emphasis added)). Under currently binding case law, the court in the *Dutriaux* action, being a New York federal court, does not have subject-matter jurisdiction. *See Bonime v. Avaya, Inc.*, 547 F.3d 497, 499 (2d Cir. 2008) (affirming "[t]he district court['s] dismiss[al] [of] the complaint for lack of subject matter jurisdiction, [which] reason[ed] that '[the

plaintiff] may not assert a class action for statutory damages under the TCPA in New York state and therefore may not utilize [the Class Action Fairness Act] to establish diversity jurisdiction,'" quoting *Bonime v. Avaya, Inc.*, 2006 U.S. Dist. LEXIS 91964 at *3 (E.D.N.Y., Dec. 20, 2006)) (as set forth in Point II.D, *infra*, *Bonime* held only that subject-matter jurisdiction was precluded in *New York* federal courts). Therefore, the first-filed rule is inapplicable here.

As for Defendant's complaint that Ms. Dutriaux and her (and Plaintiff's) New York counsel have refused to withdraw the *Dutriaux* action, *see* Def. Mem. at 7, Defendant itself notes that "[o]n April 16, 2009, Mr. Bank petitioned the United States Supreme Court for a writ of certiorari," Def. Mem. at 7-8, in *Holster v. Gatco, Inc.*, 2008 U.S. App. LEXIS 23203 (2d Cir. Oct. 31, 2008) (*cert.* pet. pending, No. 08-1307), in which the issue is the same issue as decided by *Bonime*, *i.e.*, whether Section 901(b) of the New York Civil Practice Law and Rules ("CPLR") precludes the maintenance of a TCPA class action in New York. Thus, while *Bonime* is, as noted above, currently binding case law, neither Ms. Dutriaux nor her counsel did anything wrong by refusing to withdraw the *Dutriaux* action prior to the Supreme Court's final resolution of the *Holster certiorari* petition. With respect to the current action, moreover, Plaintiff was not bound to refrain from exercising his right to bring it; nor is Plaintiff's New York counsel precluded from representing Plaintiff in light of the *Dutriaux* action, for in the event that the present action were resolved on a class-wide basis, the ensuing preclusion of Ms. Dutriaux from acting as a class representative would raise no issues regarding her or her counsel, for "the general rule [is] that all members of a certified class enjoy *the same rights* as individually named plaintiffs in the suit," *Taylor v. UPS, Inc.*, 554 F.3d 510, 521 (5th Cir. 2008) (emphasis added), because "the right of a litigant to employ [Fed.] Rule [Civ. Proc.] 23 is a *procedural right only, ancillary* to the litigation of *substantive* claims." *Deposit Guaranty Nat'l Bank v. Roper*, 445 U.S. 326, 332 (1980). That is, there is no substantive right to be a class representative.

Because the right to bring a class action is not a substantive right, the first-filed rule would at least be arguably applicable if the *Dutriaux* court would have subject-matter jurisdiction over Ms. Dutriaux's individual claim. However, the *Dutriaux* court would not have such subject-matter jurisdiction. First, Ms. Dutriaux's individual claim would not satisfy the $75,000 amount-of-controversy requirement of the diversity-jurisdiction statute, 28 U.S.C. § 1332(a); and, second, TCPA claims do not give rise to federal-question jurisdiction. *See Foxhall Realty Law Offices, Inc. v. Telecomm. Premium Svcs., Ltd.*, 156 F.3d 432, 435 (2d Cir. 1998); *Int'l Science & Tech. Inst., Inc. v. Inacom Communs., Inc.*, 106 F.3d 1146, 1153 (4th Cir. 1997).

As the inability of the Southern District of New York to exercise subject-matter jurisdiction in the *Dutriaux* action requires the denial of Defendant's request for dismissal under the first-filed rule, the arguments in Points II.C, and D, *infra*, are merely provided as alternative arguments.

**B.**     **This Court Could Stay the Present Action Pending the Supreme Court's Final Resolution of *Holster v. Gatco, Inc.*, 2008 U.S. App. Lexis 23203 (2d Cir. Oct. 31, 2008) (*cert. pet. pending*, No. 08-1307), and/or the Supreme Court's Opinion in *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins.Co.*, 549 F.3d 137 (2d Cir. 2008), *cert. granted*, 2009 U.S. Lexis 3340 (U.S. May 4, 2009)**

As noted in *Doe 2 v. Ortho-Clinical Diagnostics, Inc.*, 335 F. Supp. 2d 614 (M.D.N.C. 2004), "[a] [c]ourt has the inherent power to stay proceedings to achieve equity and to ensure the efficient management of its docket." *Id.* at 633, citing *Williford v. Armstrong World Indus., Inc.*, 715 F.2d 124, 127 (4th Cir. 1983). This Court might, therefore, wish to stay the present action pending the final resolution by the Supreme Court in *Holster v. Gatco, Inc.*, 2008 U.S. App. LEXIS 23203 (2d Cir. Oct. 31, 2008) (*cert.* pet. pending, No. 08-1307), in which the Second Circuit's holding was the same as, and was based exclusively upon, the holding of *Bonime v. Avaya, supra. See Holster*, 2008 U.S. App. LEXIS 23203 at *1. A reversal by the Supreme Court in *Holster* would enable class certification to be sought in the *Dutriaux* action, the granting of which would cause the *Dutriaux*

court to have subject-matter jurisdiction (in the form of diversity) under 28 U.S.C. § 1332(d)(2) of the Class Action Fairness Act ("CAFA"). Thus, a reversal in *Holster* would enable this Court to consider the merits of Defendant's motion for a transfer of venue, which cannot occur at present, as set forth in Point II.A, *supra*.

This Court might also wish to stay the present action pending the opinion by the Supreme Court in *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 549 F.3d 137 (2d Cir. 2008), *cert. granted*, 2009 U.S. LEXIS 3340 (U.S. May 4, 2009), because the issue there is whether the Second Circuit correctly found, just as it did in *Bonime v. Avaya*, *supra*, that Section 901(b) of the New York Civil Practice Law and Rules ("CPLR") is applicable in federal court because it is a substantive law. A reversal by the Supreme Court in *Shady Grove* would abrogate *Bonime*.

The opinion in *Bonime*, as noted above, was based on that court's finding that CPLR § 901(b) is substantive. Although the *Bonime* court recognized that "the Supreme Court's *Erie* [*v. Tompkins*, 304 U.S. 64 (1938)] doctrine does not apply *directly* to the TCPA because it is a federal law," *Bonime*, 547 F.3d at 501 (emphasis added), the court found, based on 47 U.S.C. § 227(b)(3), that "Congress directed that the TCPA be applied *as if it were a state law*," *id.* (emphasis added), leading the court to hold that, under the *Erie* doctrine, CPLR § 901(b) applies to TCPA class actions in New York federal courts. Significantly, the *Bonime* court recognized that "[u]nder *Erie*, 'federal courts . . . apply *state substantive law* and *federal procedural law*.'" *Bonime*, 547 F.3d at 501, quoting *Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 427 (1996) (emphases added). Thus, in holding that CPLR § 901(b) applies to TCPA claims in federal court, the *Bonime* court necessarily found that CPLR § 901(b) is substantive. Moreover, as noted above, the Second Circuit held, in *Shady Grove*, *supra*, that CPLR § 901(b) is substantive (and, in support of that holding, the *Shady Grove* court cited the District Court opinions in *Bonime* and *Holster*, *supra*, which had likewise held that CPLR

§ 901(b) is substantive. *See Shady Grove*, 549 F.3d at 145 & 145, n.6).

Bonime, following its conclusions that "Congress directed that the TCPA be applied as if it were a state law," *Bonime*, 547 F.3d at 501, and that CPLR § 901(b) is substantive, *see id.* at 501-502, stated that:

> A second, independent reason reinforces this conclusion. The private right of action created by the TCPA allows a person or entity to, "if otherwise permitted by the laws or rules of court of a State, bring in an appropriate court of that State," an action for a violation of the TCPA. *See* 47 U.S.C.§ 227(b)(3). This statutory language is unambiguous -- a claim under the TCPA cannot be brought if not permitted by state law. . . . This provision constitutes an *express limitation* on the TCPA which federal courts are required to respect.

*Bonime*, 547 F.3d at 502 (emphasis added).

*Bonime* clearly recognized the fact that, insofar as "the laws or rules of court of a State" constitute an *express* limitation, it applies only in *state* court. *See Bonime*, 547 F.3d at 498 ("section 227(b)(3) allows a person or entity 'if otherwise permitted by the laws or rules of court of a State,' to sue *in state court* for a violation of the TCPA" (emphasis added)); *see also id.* at 500 ("Congress[] . . . creat[ed] a federal claim which behaved like state law by allowing individuals to sue *in state courts* under the TCPA 'if otherwise permitted by the laws or rules of court of a State'" (emphasis added)). Indeed, the silence of Section 227(b)(3) with respect to federal courts was the basis of the holdings in *Foxhall* and *Int'l Science, supra,* that TCPA claims are not subject to federal-question jurisdiction; concomitantly, this silence was also the reason why the Second Circuit, in *Gottlieb v. Carnival Corp.*, 436 F.3d 335 (2d Cir. 2006), held that TCPA claims may be brought in federal court only where there is diversity jurisdiction, and why *Gottlieb* reached this holding *not* based on that part of Section 227(b)(3) that confers a private right of action to be brought in state courts, but rather on the basis that diversity jurisdiction is "an *independent* basis of federal jurisdiction." *Gottlieb*, 436 F.3d at 342 (emphasis added).

A state-law-based prohibition against bringing an action in state court also prohibits the action from being brought in federal court only if the prohibition is substantive, as *Bonime* acknowledged. *See Bonime*, 547 F.3d at 501. Thus, the *Bonime* court's "second, independent reason," *Bonime*, 547 F.3d at 502, for its holding that CPLR § 901(b) applies to a TCPA claim in a New York federal court, like *Bonime*'s primary reasoning, necessarily rests on the notion that CPLR § 901(b) is substantive, the correctness of which, as discussed above, is pending before the Supreme Court in *Shady Grove*, *supra*, thus weighing in favor of a stay of the present action pending the Supreme Court's opinion there as well as the Supreme Court's ultimate resolution in *Holster*, *supra*.

## C.    In the *Dutriaux* Action, There Was Minimal Discovery; Nor Was There a Single Substantive Decision Issued by the Court

Defendant contends that "while the *Dutriaux* action has been pending . . . , discovery has commenced, numerous pleadings and motions have been served and filed, and the Court has become familiar with Ms. Dutriaux's factual allegations and legal theories, as well as with the relevant provisions of the TCPA." Def. Mem. at 16. In fact, there was the barest amount of discovery in the *Dutriaux* action, nor a single substantive ruling by the court. With respect to discovery, Plaintiff served discovery demands, to which Defendant never responded. The only discovery demands served by Defendant was a set of three document requests (a copy of Defendant's discovery demands is annexed to the Declaration of Todd C. Bank as Exh. "B"; a copy of Plaintiff's response to Defendant's document requests is annexed to the Declaration of Todd C. Bank as Exh. "C").

With respect to motions, Defendant, on June 27, 2005, moved for dismissal based upon CPLR § 901(b), and upon Defendant's contention that diversity jurisdiction is not available under the TCPA. Following the issuance of *Gottlieb v. Carnival Corp.*, 436 F.3d 335 (2d Cir. 2006), which held that TCPA claims are subject to diversity jurisdiction, Defendant withdrew that motion (a copy of the parties' stipulation, dated March 21, 2006, is annexed to the Declaration of Todd C. Bank as Exh.

"D"). On July 3, 2006, Ms. Dutriaux made a motion to amend the complaint, which was granted in a one-page order on November 9, 2006 (a copy of the order is annexed to the Declaration of Todd C. Bank as Exh. "E"). On December 11, 2006, Defendant sought dismissal of the amended complaint for failure to state a claim. In a one-page order issued on June 21, 2007, the court denied Defendant's motion without prejudice as moot, noted that Ms. Dutriaux had withdrawn one of her claims, directed Ms. Dutriaux to file a second amended complaint, and set a briefing schedule for Defendant's anticipated motion to dismiss the second amended complaint (a copy of the order is annexed to the Declaration of Todd C. Bank as Exh. "F"). On June 29, 2007, Defendant moved to dismiss Ms. Dutriaux's second amended complaint. In a one-page order dated July 14, 2007, the court stayed the action pending the resolution of the appeals to the Second Circuit in *Bonime* and *Holster*, *supra* (a copy of the order is annexed to the Declaration of Todd C. Bank as Exh. "G"). On December 2, 2008, the *Dutriaux* action was administratively closed. *See* Def. Mem. at 8 (a copy of the order of administrative closure is annexed to the Declaration of Todd C. Bank as Exh. "H").

**D.      There are Key Differences Between the Legal Issues in the Present Action and the Legal Issues in the *Dutriaux* Action**

Defendant states that "[t]he legal and factual issues raised in the *Dutriaux* Action and this action . . . are the same." Def. Mem. at 18. However, there are two key differences. The first difference is the issue of whether CPLR § 901(b) applies to a class action brought by a New York plaintiff in a non-New York court. In *Bonime*, *supra*, the court held that the TCPA incorporates state law into federal-court TCPA actions, *see Bonime*, 547 F.3d at 501; more specifically, *Bonime* held that the TCPA incorporates the law of the state *in which the federal court sits*. *See id.* at 499 ("[t]he district court [whose opinion *Bonime* affirmed] dismissed the complaint for lack of subject matter jurisdiction, reasoning that '[the plaintiff] may not assert a class action for statutory damages under the TCPA *in New York state*'" (emphasis added) (citation omitted); *id.* at 500 ("[a]s the district court

16

correctly noted, 'a class action for statutory damages under the TCPA is not actionable *in New York state court*.'") (emphasis added) (citation omitted); *id.* at 501 ("federal courts must apply C.P.L.R. 901(b) when faced with putative *New York class actions* brought under the TCPA.") (emphasis added); *id.* at 502 ("[t]he private right of action created by the TCPA allows a person or entity to, 'if otherwise permitted by *the laws or rules of court of a State*, bring in an appropriate court *of that State*,' an action for a violation of the TCPA," quoting 47 U.S.C. § 227(b)(3) (emphases added). Thus, even if TCPA claims incorporate state law, New York state law would not, under the reasoning of *Bonime*, be incorporated into the present action. *But see Weber v. U.S. Sterling Securities, Inc.*, 924 A.2d 816, 825-828 (Conn. 2007) (holding that CPLR § 901(b) precludes a New York citizen from maintaining a TCPA class action in Connecticut state court).

A second issue that distinguishes the present action from the *Dutriaux* action is the issue of standing. As discussed in Point I, *supra*, Defendant itself has argued that Ms. Dutriaux might have standing, but that Plaintiff, whose standing is not at issue in the *Dutriaux* action, does not have standing. In any event, although Plaintiff was eligible to be joined with Ms. Dutriaux in the New York action under Fed. R. Civ. P. 20(a), Plaintiff was entitled to bring his own action because such joinder was not mandatory. *See United States v. County of Arlington*, 669 F.2d 925, 929 (4th Cir. 1982).

## POINT III

### THIS ACTION MAY NOT BE TRANSFERRED TO THE SOUTHERN DISTRICT OF NEW YORK

**A.** **Because, Under Currently Binding Case Law, Plaintiff Would Not Be Able to Establish Subject-Matter Jurisdiction in the Southern District of New York, the Present Action Is Not Subject to Transfer Under 28 U.S.C. § 1404(a)**

Defendant contends that this action should be transferred to the Southern District of New York pursuant to 28 U.S.C. § 1404(a). *See* Def. Mem. at 19-21. However, as noted in Point II.A, *supra*, the court to which an action is transferred under 28 U.S.C. § 1404(a) must have subject-matter

jurisdiction, which, under presently binding case law, would not be so here. As in the case of the first-filed rule, *see* Point II.A, *supra*, the inability of New York courts to exercise subject-matter jurisdiction requires the denial of Defendant's request, as a result of which the remaining arguments of this Point, *see* Points III.B and C, *infra*, are merely provided as alternative arguments.

## B. Defendant Has Not Met Its Burden Under 28 U.S.C. § 1404(a)

Defendant, rather than meeting the high standard required of a motion for a transfer of venue, see *Century Furniture, LLC v. C & C Imports, Inc.*, 2007 U.S. Dist. LEXIS 68343 at *8 (W.D.N.C. Sept. 14, 2007) submits a single declaration from an employee of DialAmerica Marketing, Inc. ("DialAmerica"), the third-party telemarketing company that Defendant hired to make the calls that gave rise to this action, and states that "DialAmerica is located within the subpoena power of the Southern District of New York; it is not within this Court's subpoena power." Def. Mem. at 20. It is simply impossible, on the basis offered by Defendant, to conclude that Defendant has met its burden. In addition, Defendant fails to acknowledge that its own witnesses are located within the subpoena power of this Court but not within the subpoena power of Southern District of New York. *See American Cas. Co. v. Filco*, 2005 U.S. Dist. LEXIS 3064 at *10 (N.D. Ill. Jan. 19, 2005) ("Defendants' focus on the interests of non-party witnesses is misplaced. As is clearly indicated in 28 U.S.C. § 1404(a) the court must consider the convenience of all witnesses and parties.").

In *Commercial Equipment Co. v. Barclay Furniture Co.*, 738 F. Supp. 974 (W.D.N.C. 1990), the court considered the number of witnesses that would be subject to the transferor court's subpoena power versus the number that would not be so subject. *See id.* at 977-978. Defendant, however, has not provided any such evidence. In any event, when, "[r]egardless of where [a] case is tried, it is likely that one party will have to use deposition testimony as a substitute for live testimony because of the inability to compel the attendance of some witnesses," *Commercial Equipment Co.*, 738 F. Supp. at

978, a defendant will have "failed to satisfy its burden of showing that a transfer is necessary in the interests of justice or for the convenience of the witnesses." *Id.* at 980.

Even if Defendant had met its burden (which it clearly has not), it would be improper to grant Defendant's motion without first permitting Plaintiff to conduct discovery in order to oppose the motion, following which Defendant would have the right to renew the motion. *See Kron Medical Corp. v. Groth*, 119 F.R.D. 636, 638 (M.D.N.C. 1988) ("prior to ruling on the motion to transfer, discovery may be required in order to identify and refine the issues pertinent to the transfer issue."); *see also Casana Furniture Co. v. Coaster Co. of America*, 2009 U.S. Dist. LEXIS 23141 at *13 (M.D.N.C. Mar. 24, 2009); *O'Charley's Mgmt. Co. v. Darden Concepts, Inc.*, 2007 U.S. Dist. LEXIS 46208 at *8-*9 (M.D. Tenn. June 25, 2007).

## C.    Plaintiff Had the Right to Choose a Court in Which He Could Avail Himself of Rule 23 of the Federal Rules of Civil Procedure

Defendant contends that "Plaintiff's New York counsel's transparent forum shopping to try to circumvent New York law that would preclude a class action also favors transfer back to New York." Def. Mem. at 21. However, insofar as Plaintiff and/or his counsel brought this action in a venue that might provide for the recovery they seek, they have done nothing improper:

> insofar as the federal courts apply state law, they apply the laws of fifty separate jurisdictions, rather than one. A certain amount of forum shopping inevitably results from our federal system; a plaintiff may, within the limits imposed by process and venue requirements, *choose the state whose law will be applied to his action by his power to choose the court* in which he will institute his action. *We find nothing in the language or policy of § 1404(a) which would sanction its use by a defendant to defeat this choice by the plaintiff.* Indeed, we find this result to be compelled by the concept of the federal courts as a single system. Although as a matter of federal policy a case may be transferred to a more convenient part of the system, whatever rights the parties have acquired under state law should be unaffected. The case should remain as it was in all respects but location.

*H.L. Green Co. v. MacMahon*, 312 F.2d 650, 652-653 (2d Cir. 1962) (emphases added). *See also*

*Miles v. Ill. Cent. R.R. Co.*, 315 U.S. 698, 707 (1942) (Jackson, J., concurring) (stating, in reference to a plaintiff's right to choose his venue, that "[t]here is nothing which requires a plaintiff to whom such a choice is given to exercise it in a self-denying or large-hearted manner").

Consistent with the general rule, there is nothing improper in choosing one's venue in order to avail oneself of federal procedural rules in particular (here, Rule 23 of the Federal Rules of Civil Procedure). In *Hanna v. Plumer*, 380 U.S. 460 (1965), the Court, dealing with the bringing of actions as between state courts and federal courts, explained that "[t]he 'outcome-determination' test [that is used to determine whether a given state law should apply to a state-law claim in federal court, must] be read with[] reference to the twin aims of the *Erie* [*R.R. v. Tompkins*, 304 U.S. 64 (1938)] rule: discouragement of forum-shopping and avoidance of inequitable administration of the laws." *Id.* at 468. However, the Court proceeded to explain that the *Erie* analysis, *i.e.*, its concerns regarding forum-shopping, does not apply "[w]hen a situation is covered by one of the Federal Rules [of Civil Procedure]." *Id.* at 471. *See also* 7A Charles Alan Wright *et. al.*, *Federal Practice and Procedure: Civil 3d*, § 1758 at 118 (3d ed. 2005) ("[t]he *Hanna* decision resolves any doubt as to the *availability of a class action* in a federal court under Rule 23 in a *diversity* action, *even in a state that does not recognize the procedure*.") (emphases added); Erwin Chemerinsky, *Federal Jurisdiction*, § 5.3 at 317 (4th ed. 2003) ("it is now clearly established that the Federal Rules of Civil Procedure . . . are to be applied by the federal court, *even if there is a conflicting state requirement* and even if the application of the federal Rule might *determine the outcome* of the case.") (emphases added).

Reflecting the foregoing principle is *Logue v. Nissan North America, Inc.*, 2008 U.S. Dist. LEXIS 64937 (W.D. Tenn. July 30, 2008), in which the court held that the plaintiff was not seeking to engage in improper forum-shopping by moving to withdraw his action in order to re-file it in a non-Tennessee court for the purpose of avoiding a Tennessee rule against seeking class relief in Tennessee

20

courts. *See id.* at *2-*4, *17-*19.

Further attempting to impugn Plaintiff's New York counsel, Defendant states that "Mr. Bank was chastised by at least one [c]ourt when he sought to vacate a judgment in his client's favor in order to amend the complaint to continue the action as a class action." Def. Mem. at 4, citing *Rudgayzer & Gratt v. LRS Communications, Inc.*, 776 N.Y.S.2d 158, 160, 165-66 (N.Y. Civ. Ct. 2003). Had Defendant pointed out that Plaintiff's New York counsel was sanctioned by that court, Defendant would then have been obligated to inform this Court that the sanction was reversed on appeal (but not the underlying denial of the plaintiff's motion, such denial having been based upon CPLR § 901(b)), as Defendant's counsel surely knows. *See Rudgayzer & Gratt v. LRS Communications, Inc.*, 789 N.Y.S.2d 601, 604 (N.Y. App. Term 2004). This lack of forthrightness by Defendant's counsel is plainly transparent. Finally, Defendant's mention of the fact that Plaintiff's New York counsel has represented Plaintiff in other actions, *see* Def. Mem. at 8, & 8, n.8, clearly has no relevance to the merits of Defendant's motion.

Apparently stuck on the idea that impugning Plaintiff and his New York counsel might be received favorably by this Court, Defendant states that "Mr. Leyse's North Carolina counsel Mr. Jackson confirmed that Mr. Bank—not Mr. Leyse—contacted Mr. Jackson regarding his appearance as local counsel." Def. Mem. at 8-9. Exactly what is unusual about Plaintiff's New York counsel having contacted Mr. Jackson is not clear, but apparently Defendant hopes that this Court will see something untoward in such a routine matter.

Plaintiff and his New York counsel have, indeed, brought this action in this Court in order to be able to obtain the full relief that Plaintiff seeks, *i.e.*, individual and class relief. However, Defendant, in arguing that it would prefer to have its own witnesses fly to New York for trial rather than have the witnesses of its third-party telemarketing company fly from New Jersey to Charlotte,

does not admit to the obvious on its part: that its real reason for seeking have this action transferred to New York is so that it could avail itself of CPLR § 901(b) and thereby preclude Plaintiff from obtaining the full relief that he seeks. This is precisely the type of situation in which

> [c]ourts should be mindful that, just as plaintiffs sometimes choose a forum for forum-shopping reasons, defendants also may move for dismissal under the doctrine of *forum non conveniens* not because of genuine concern with convenience but because of similar forum-shopping reasons. District courts should therefore arm themselves with an appropriate degree of skepticism in assessing whether the defendant has demonstrated genuine inconvenience and a clear preferability of the foreign forum. And the greater the degree to which the plaintiff has chosen a forum where the defendant's witnesses and evidence are to be found, the harder it should be for the defendant to demonstrate inconvenience.

*Iragorri v. United Techs. Corp.*, 274 F.3d 65, 75 (2d Cir. 2001).

## POINT IV

## PLAINTIFF IS ENTITLED TO ACT *PRO SE*

**A.  Plaintiff Is Not Required to be Represented by Counsel at Least Until the Class-Certification Stage of this Action**

As recognized in *Myers v. Loudon Co. Pub. Schools*, 418 F.3d 395 (4th Cir. 2005), "[a]n individual unquestionably has the right to litigate his own claims in federal court, before both the district and appellate courts." *Id.* at 400. Although this action is a class action, the issue of whether Plaintiff is represented by qualified counsel is premature, because "until certification there is no class action but merely the prospect of one; the only action is the suit by the named plaintiffs." *Morlan v. Universal Guar. Life Ins. Co.*, 298 F.3d 609, 616 (7th Cir. 2002). *See also Gibson v. Chrysler Corp.*, 261 F.3d 927, 937 (9th Cir. 2001) ("[a] class action complaint is filed only by a named plaintiff or plaintiffs. Although such an action is often referred to as a class action when it is filed, it is, at the time of filing, only a would-be class action. It does not become a class action until certified."); *id.* at 940 ("a class action, when filed, includes only the claims of the named plaintiff or plaintiffs. The

22

claims of unnamed class members are added to the action later, when the action is certified as a class under Rule 23."); *Uyeda v. J.A. Cambece Law Office, P.C.*, 2005 U.S. Dist. LEXIS 9271 at \*14-\*15 (N.D. Cal. May 16, 2005) ("[g]enerally, a defendant can attack the merits of a proposed class's claim in a motion to dismiss even before the plaintiff moves for class certification. However, if the defendant chooses to attack a proposed class's ability to meet the prerequisites of Fed. R. Civ. P. 23(a) or (b) [which include adequacy of representation], the defendant should do so by opposing the plaintiff's motion for class certification."

## B.     The Drafting of this Brief by Plaintiff's New York Counsel Was Entirely Proper

At the time that Mr. Bank prepared, and provided Plaintiff with a copy of, this brief, Mr. Bank was admitted *pro hac vice*, because Plaintiff was, during that time, represented by Jackson & McGee, LLP. Therefore, there is no issue of whether Mr. Bank engaged in the unauthorized practice of law in violation of N.C. Gen. Stat. § 84-4, which states that, "[e]xcept as otherwise permitted by law," the practice of law in North Carolina is limited to "members of the Bar of the State of North Carolina." Even if Mr. Bank had not been admitted *pro hac vice*, the application here of N.C. Gen. Stat. § 84-4-2.1, insofar as it includes, in the definition of "'practic[ing] law[,]' . . . the preparation . . . of petitions for use in any court," would contravene the First Amendment.

First, the First Amendment "right to petition extends to all departments of the Government, and [] the right of access to the courts is . . . but one aspect of the right of petition." *BE & K Constr. v. NLRB*, 536 U.S. 516, 526 (2002). The right of access to the courts is applicable whether the issue being litigated is political or wholly mundane, and whether or not the government is a party to the litigation. *See United Mine Workers v. Ill. State Bar Ass'n*, 389 U.S. 217, 223 (1967).

Second, the right to engage in First Amendment activity also includes the right to associate with others in order to engage in, or further, such activity. *See Roberts v. United States Jaycees*, 468

U.S. 609, 622 (1984) ("[a]n individual's freedom to speak, to worship, and to *petition the*
*government for the redress of grievances* could not be vigorously protected from interference . . .
unless a correlative freedom to engage in *group effort* toward those ends were not also guaranteed
. . . . we have long understood as implicit in the right to engage in activities protected by the First
Amendment a *corresponding right to associate with others*." *Id.* (emphases added).

The type of speech at issue here is entitled to maximum First Amendment protection, because
"legal advice . . . do[es] not consist of speech that proposes a commercial transaction, which is what
defines commercial speech," *Board of Trustees v. Fox*, 492 U.S. 469, 482 (1989); nor does the
characterization of such speech as non-commercial depend upon whether it is provided for
compensation, *see id.*; and, indeed, "[s]ome of our most valued forms of fully protected speech are
uttered for a profit." *Id. See also Grosjean v. Bommarito*, 302 Fed. Appx. 430, 438 (6th Cir. 2008)
("[l]egal advice to a client is quintessential private speech"). As recognized in *United Mine Workers*,
*supra*, it is "beyond question . . . [that] the States have broad power to regulate the practice of law[,]
. . . [b]ut it is equally apparent that broad rules framed to protect the public and to preserve respect
for the administration of justice can in their actual operation significantly impair the value of
associational freedoms." *United Mine Workers*, 389 U.S. at 222.

In light of Mr. Bank's drafting of this brief, the leniency that courts customarily extend to *pro
se* litigants need not be afforded here if this Court finds that "the policies underlying the Court's
admonition to accord *pro se* litigants an understanding view of their pleadings and conduct do not
have force." *Walker v. Suburban Hosp. Ass'n*, 1991 U.S. App. LEXIS 4049 at *4, n.2 (4th Cir. Mar.
13, 1991). Here, the quality of this brief should enable this Court to decide whether Plaintiff would
warrant any leniency, and, if so, how much. While this Court's explicit knowledge of Mr. Bank's role
might be a factor in this Court's consideration, such acknowledgment could not have been required

of Plaintiff. *See Church of the American Knights of the Ku Klux Klan v. Kerik*, 356 F.3d 197, 208 (2d Cir. 2004) ("[i]n numerous decisions, the Supreme Court has recognized a right to anonymous speech grounded in the First Amendment freedoms of speech and association"); *see also id.*, citing *Talley v. California*, 362 U.S. 60 (1960), as having "invalidat[ed] a Los Angeles ordinance that prohibited the distribution of handbills without the names and addresses of persons who prepared, distributed, or sponsored the handbills); *id.* at 208-209, citing *Buckley v. American Constitutional Law Foundation, Inc.*, 525 U.S. 182 (1999), as having "held that the First Amendment was violated by a Colorado statute that required persons who circulated petitions for an initiative to wear identification badges revealing their names."

Finally, as noted above, N.C. Gen. Stat. § 84-4 restricts the practice of law "[e]xcept as otherwise permitted by law." Such "law" is presumed to include the Constitution. *See Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 16, n.15 (1987), such that Mr. Bank, even if he had not been admitted when preparing this brief, would still have complied with N.C. Gen. Stat. § 84-4.

## CONCLUSION

For all the foregoing reasons, Plaintiff respectfully requests that this Court deny Defendant's motion in its entirety, and grant Plaintiff such further relief as this Court deems just and proper.

Dated: August 3, 2009

Respectfully submitted,

MARK LEYSE
Plaintiff *Pro Se*
P.O. Box 1314
New York, NY 10025

MARK LEYSE