```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
───────────────────────────────────
MARK LEYSE,

                    Plaintiff,         09 Civ. 7654 (JGK)

     - against -                       MEMORANDUM OPINION AND
                                       ORDER
BANK OF AMERICA, NATIONAL
ASSOCIATION,

                    Defendant.
───────────────────────────────────
```

JOHN G. KOELTL, District Judge:

Mark Leyse ("the plaintiff" or "Leyse") originally brought this action on behalf of himself and others similarly situated against the Bank of America, National Association ("the defendant" or "Bank of America") in the United States District Court for the Western District of North Carolina, alleging that a phone call placed by Bank of America to Leyse's residence in New York on March 11, 2005 violated a provision of the Telephone Consumer Protection Act ("TCPA") and regulations promulgated under the TCPA.  See 47 U.S.C. § 227(b)(1)(B); 47 C.F.R. § 64.1200(a)(2).  Bank of America moved to transfer the case to this Court where a suit filed by Leyse's roommate regarding the same telephone call is pending.  See Dutriaux v. Bank of Am., Nat'l Ass'n, No. 05 Civ. 3838 (S.D.N.Y. filed Apr. 12, 2005). The Dutriaux action was stayed pending the appeals in Holster v. Gatco, Inc., 485 F. Supp. 2d 179 (E.D.N.Y. 2007), aff'd, 2008 U.S. App. LEXIS 23203 (2d Cir. 2008), vacated and remanded, 130

S. Ct. 1575 (2010) and Bonime v. Avaya, Inc., No. 06 Civ. 1630, 2006 WL 3751219 (E.D.N.Y. Dec. 20, 2006), aff'd, 547 F.3d 497 (2d Cir. 2008).[1]  The court in North Carolina granted the motion and transferred this case to this Court.

Bank of America now moves to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1), alleging that Leyse does not have standing to bring this action because Leyse's roommate Genevieve Dutriaux ("Dutriaux"), rather than Leyse, was the subscriber for the telephone line in their home.  The plaintiff opposes the motion, arguing that it was Leyse who answered the telephone call and that any resident of the home who uses the telephone line is a "called party" with a private cause of action for $500 in statutory damages pursuant to 47 U.S.C. § 227(b)(3)(B) and 47 C.F.R. § 64.1200(a)(2).

I.

In defending a motion to dismiss for lack of subject matter jurisdiction pursuant to Federal Rule of Procedure 12(b)(1), the plaintiff bears the burden of proving the Court's jurisdiction by a preponderance of the evidence.  Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000).  In considering such a motion,

---

[1] The Supreme Court of the United States' recent decision in Shady Grove resolved the relevant issues on appeal in Holster and Bonime.  See Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co., 130 S. Ct. 1431 (2010).

2

the Court generally must accept the material factual allegations in the complaint as true. See J.S. ex rel. N.S. v. Attica Cent. Sch., 386 F.3d 107, 110 (2d Cir. 2004). The Court does not, however, draw all reasonable inferences in the plaintiff's favor. Id.; Graubart v. Jazz Images, Inc., No. 02 Civ. 4645, 2006 WL 1140724, at *2 (S.D.N.Y. Apr. 27, 2006). Indeed, where jurisdictional facts are disputed, the Court has the power and the obligation to consider matters outside the pleadings, such as affidavits, documents, and testimony, to determine whether jurisdiction exists. See Anglo-Iberia Underwriting Mgmt. Co. v. P.T. Jamsostek (Persero), 600 F.3d 171, 175 (2d Cir. 2010); APWU v. Potter, 343 F.3d 619, 627 (2d Cir. 2003); Filetech S.A. v. France Telecom S.A., 157 F.3d 922, 932 (2d Cir. 1998); Kamen v. Am. Tel. & Tel. Co., 791 F.2d 1006, 1011 (2d Cir. 1986). In so doing, the Court is guided by that body of decisional law that has developed under Federal Rule of Civil Procedure 56. Kamen, 791 F.2d at 1011; see also McKevitt v. Mueller, No. 09 Civ. 3744, 2010 WL 532508, at *1 (S.D.N.Y. Feb. 16, 2010).

**II.**

The following facts are taken to be true for the purposes of this motion.

Bank of America alleges, and Leyse does not deny, that Leyse and Dutriaux were roommates at an address in New York on March 11, 2005.  (See Bank of America's Mem. of Law in Supp. of its Mot. to Dismiss 9 & n.9.)  On that date, DialAmerica Marketing, Inc. ("DialAmerica") placed a prerecorded telemarketing call on behalf of Bank of America to a phone number that was associated with Dutriaux in DialAmerica's records.  (Am. Compl. ¶ 9; Nelson Decl. ¶¶ 2-3, Ex. 1.)  DialAmerica's records did not associate the phone number with Leyse.  (Nelson Decl. ¶ 3, Ex. 1.)  Dutriaux alleges in her complaint that she was the subscriber to the telephone line that was called, and Leyse does not deny this claim in his briefs.  (Mooney Decl. Ex. 4 at ¶¶ 7, 9, July 22, 2009.)  At oral argument of the current motion the plaintiff's counsel represented that Leyse answered the telephone call.  In her original complaint in this Court, Dutriaux, represented by the same counsel as Leyse, alleged that the call was left on her home answering device.  (Mooney Decl. Ex. 2 at ¶ 9, July 22, 2009.)  In her amended complaint, Dutriaux obscured this paragraph by alleging only that the call was placed to Dutriaux's residential telephone line.  (Mooney Decl. Ex. 4 at ¶ 9, July 22, 2009.)

The message in the call included all of the information required by 47 C.F.R. § 64.1200(a)(6).  (Am. Compl. ¶ 10.)  Bank

4

of America alleges, and Leyse does not deny, that Dutriaux voluntarily returned the call and spoke with Bank of America representatives about credit card offerings.  (Bank of America's Mem. of Law in Supp. of its Mot. to Dismiss 6.)  When a call was placed to the number provided in the prerecorded message, the caller heard a prerecorded message listing various options, including options to apply for a Bank of America credit card and to speak to a representative regarding a call that had been received.  (Am. Compl. ¶ 12.)  According to the plaintiff, a caller who spoke with Bank of America representatives would be encouraged to apply for a Bank of America credit card, even if they selected the option to speak with someone regarding a prior telephone call.  (Am. Compl. ¶ 15.)  The plaintiff alleges that the call placed to his home and the subsequent call to Bank of America were a pretext to violate 47 U.S.C. § 227(b)(1)(B) and 47 C.F.R. § 64.1200(a)(2).  (Am. Compl. ¶¶ 14, 16.)  Leyse also alleges that such calls were placed to at least 10,000 individuals.  (Am. Compl. ¶ 17.)

On April 12, 2005 Dutriaux filed a class action complaint, later amended, in this Court against Bank of America alleging violations of 47 U.S.C. § 227(b)(1)(B) and 47 C.F.R. § 64.1200(a)(2) and seeking statutory damages and injunctive relief pursuant to 47 U.S.C. § 227(b)(3).  (Mooney Decl. Exs. 1-4, July 22, 2009.)  On July 14, 2007 the Dutriaux action was

5

stayed in this Court pending the appeal of the holdings in Bonime and Holster that N.Y. C.P.L.R. § 901(b) barred putative TCPA class actions in both state and federal court.  See Bonime, 2006 WL 3751219; Holster, 485 F. Supp. 2d at 179.

On March 10, 2009, Leyse filed this action in the United States District Court for the Western District of North Carolina.  (Mooney Decl. Ex. 9, July 22, 2009.)  Bank of America moved to dismiss or to transfer the action to this Court.  The motion to transfer was granted and on September 2, 2009, this action was transferred to this Court.

Bank of America now moves to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1), alleging, among other arguments, that Leyse lacks standing to bring this action.  The defendant opposes the motion.

**III.**

The Court of Appeals for the Second Circuit has recently explained:

> The irreducible constitutional minimum of standing, rooted in Article III's case-or-controversy requirement, consists of three elements:  (1) injury in fact, by which is meant an invasion of a legally protected interest; (2) a causal connection between the injury and the conduct complained of; and (3) a likelihood that the injury will be redressed by a favorable decision.  The

6


>     legally protected interest may exist solely
>     by virtue of statutes creating legal rights,
>     the invasion of which creates standing.
>     Accordingly, standing is gauged by the
>     specific common-law, statutory or
>     constitutional claims that a party presents.

Fulton v. Goord, 591 F.3d 37, 41 (2d Cir. 2009) (internal citations and quotation marks omitted).  The issue in this case is whether the defendant's alleged violation of the TCPA was an invasion of the plaintiff's legally protected interest such that the plaintiff has suffered an injury in fact sufficient for standing.

Under the TCPA, it is unlawful for any person within the United States "to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party, unless the call is initiated for emergency purposes or is exempt by rule or order by the [Federal Communications] Commission . . . ."  47 U.S.C. § 227(b)(1)(B).  Thereafter, the Federal Communications Commission promulgated regulations exempting from the ban calls made for emergency or commercial purposes, calls made of a commercial purpose that do not constitute "unsolicited advertisement" or "telephone solicitation," calls "made to any person with whom the caller has an established business relationship at the time the call is

7

made," or calls on behalf of non-profit organizations.  See 47 C.F.R. § 64.1200(a)(2).

The TCPA creates a private cause of action for a person to enjoin violations of the provisions of the TCPA and for statutory damages of $500 for each violation of the statute. See 47 U.S.C. § 227(b)(3).  A statute may permit recovery of statutory damages for statutory violations even when the plaintiff has not suffered actual damages.  Cf. Miller v. Wolpoff & Abramson, L.L.P., 321 F.3d 292, 307 (2d Cir. 2003) (finding plaintiff has standing to sue for violation of Fair Debt Collection Practices Act ("FDCPA") even though plaintiff did not suffer actual damages); Ehrich v. I.C. Sys., Inc., No. 09 Civ. 726, 2010 WL 301965, at *2 (E.D.N.Y. Jan 20, 2010) (citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992)) (same).  The "called party" has standing to bring suit against a person or entity that violates the TCPA, even if the called party has suffered no actual harm.  See 47 U.S.C. 227(b)(1)(B); Landsman & Funk, P.C. v. Lorman Bus. Ctr., Inc., No. 08 Civ. 481, 2009 WL 602019, at *3 (W.D. Wis. Mar. 9, 2009) (finding allegation that defendant sent fax to plaintiff in violation of TCPA sufficient basis for standing because Congress created "legally enforceable bounty system[] for assistance in enforcing" the TCPA).

Section 227(b)(1)(B) prohibits initiating a phone call using a prerecorded message to any residential telephone line "without the prior express consent of the called party" unless the exceptions under 47 C.F.R. § 64.1200(a)(2) apply.  47 U.S.C. § 227(b)(1)(B).  A called party who receives such a call is permitted to bring suit to collect $500 in statutory damages. See 47 U.S.C. § 227(b)(3).  Bank of America argues that it is only the telephone subscriber who has standing to bring an action for statutory damages under the TCPA.  Bank of America points to legislative history and references to residential telephone subscribers in the text of the TCPA and subsequent regulations.  See, e.g., 47 U.S.C. § 227(a)(2)(A) (defining "established business relationship" as including a "relationship between a person or entity and business subscriber subject to the same terms applicable under such section to a relationship between a person or entity and a residential subscriber"); S. Rep. No. 102-178, at 1 (1991) ("The purposes of the bill are to protect the privacy interests of residential telephone subscribers . . . ."); 47 C.F.R. § 64.1200(c)(1), (c)(2), (d) (referring to "residential telephone subscriber[s]").  Leyse responds that the "called party" should not be interpreted as the equivalent of a "residential subscriber."

However, in this case Leyse is not a "called party" within the meaning of § 227(b)(1)(B).  The uncontroverted evidence

9

shows that DialAmerica, the entity that placed the call on behalf of Bank of America, placed the call to Dutriaux, Leyse's roommate and the telephone subscriber.  DialAmerica's records demonstrate that it associated the phone number with Dutriaux, not with Leyse.  To the extent that Leyse picked up the phone, he was an unintended and incidental recipient of the call.

In Kopff, the United States District Court for the District of Columbia found that a wife who acted as the executive assistant to her husband, the president of a business, did not have standing to bring an action for statutory damages under the TCPA when a business sent a fax in violation of the TCPA addressed to her husband as president of the company.  See Kopff v. World Research Group, LLC, 568 F. Supp. 2d 39, 40-42 (D.D.C. 2008).  While the wife retrieved the faxes at issue from the business's fax machine, they were addressed to the husband as president of the company.  Likewise, in the present case, while the prerecorded message did not address Dutriaux by name and it was Leyse who allegedly answered the phone, Dutriaux was the intended recipient of the call because it was Dutriaux whose name was associated with the telephone number in DialAmerica's records.

Leyse cites two cases from the Ohio Court of Common Pleas finding that the recipient of calls or faxes that violated other provisions of the TCPA had standing to sue, even when the

10

plaintiff was not the intended recipient of the call or fax. See Dawson v. Am. Dream Home Loans, No. 06 Civ. 513, 2006 WL 2987104, at *4 (Ohio Ct. Com. Pl. Oct. 4, 2006); Charvat v. AT&T Corp., No. 98 Civ. 9334, 1999 TCPA Rep. 1005, at *7 (Ohio Ct. Com. Pl. Nov. 30, 1999).  While each of these cases interpret standing under other provisions of the TCPA, to the extent they could be read to find standing under the provisions in this case, the Court declines to follow them.  If any person who receives the fax or answers the telephone call has standing to sue, then businesses will never be certain when sending a fax or placing a call with a prerecorded message would be a violation of the TCPA.  Under the statute, a business is permitted to send a fax or phone call with a prerecorded message to persons who have given prior express consent or with whom the business has an existing business relationship.  See 47 U.S.C. § 227(b)(1)(B); 47 C.F.R. § 64.1200(a)(2)(iv).  When a business places such a call or sends such a fax, it does not know whether the intended recipient or a roommate or employee will answer the phone or receive the fax.  If the business is liable to whomever happens to answer the phone or retrieve the fax, a business could face liability even when it intends in good faith to comply with the provisions of the TCPA.

    Leyse also cites In re Consumer.Net, 99 F.C.C. 401 (1999), a case in which the Federal Communications Commission held that

the TCPA's do-not-call provisions apply to specific telephone numbers rather than telephone subscribers.  In Consumer.Net, a husband's do-not-call request was violated when the defendant subsequently called the same telephone line, even though the defendant alleged that it was calling his wife.  Id. at 1.37 (stating the defendant's argument that it is permitted to call a different party at the same number "would eviscerate the policy goals of the statute in protecting telephone subscribers from unwanted telemarketing calls by creating a virtually irrefutable defense that the telemarketer was trying to reach 'someone else' at that number.").  Consumer.Net dealt with the do-not-call provision of the TCPA, which is not the provision at issue in this case.[2]  Moreover, it did not deal with the question of standing.  Indeed, it was alleged that AT&T violated regulations by failing to send copies of its do-not-call policies to the telephone subscriber and that AT&T violated the do-not-call provision by placing a call to a subscriber after the subscriber made a do-not-call request.  Id. at 1.8 & 1.37.

Bank of America argues that it would be absurd to allow any person who happens to pick up the phone to sue for damages for a violation of the TCPA.  The statute, according to Bank of

---

[2] The do-not-call provision forbids telephone solicitations to a "residential telephone subscriber" when the subscriber has registered the subscriber's telephone number on the national do-not-call list.  See 47 C.F.R. § 64.1200(c)(2).  The provision relevant to this case, on the other hand, forbids prerecorded calls to residential telephone lines "without the prior express consent of the called party."  47 C.F.R. § 64.1200(a)(2).

12

America, only contemplates one such recovery by the residential telephone subscriber.  Otherwise, a business with the express prior consent to call a residential telephone subscriber, or with an established business relationship with a residential telephone subscriber, would have to obtain permission from all persons who live in the home before making a call pursuant to 47 U.S.C. § 227(b)(1)(B) or 47 C.F.R. § 64.1200(a)(2)(iv).  The statute, on Bank of America's view, does not require a business to take such inconvenient precautions.  Leyse responds that if the defendants' view prevails, it will be equally absurd for a business to have to inquire as to whether a person giving the business express prior consent is in fact the person whose name is on the telephone bill for their residence.

The TCPA is not as infirm as either party suggests.  The face of the statute itself permits prerecorded calls when a business has the prior express consent of the "called party."  47 U.S.C. § 227(b)(1)(B).  It is apparent that in this case Leyse was not the called party, although Leyse answered the telephone.  Bank of America called Dutriaux, and it is Dutriaux who could grant permission for Bank of America to place that call to her, or pursue her statutory damages.  Bank of America did not call Leyse; therefore, Bank of America was not required to seek Leyse's permission to place the call.

13

Nor was Bank of America required to determine that Dutriaux was the residential telephone subscriber.  If Bank of America had the prior express consent of Dutriaux to place the call to her residence, it would be free to call Dutriaux regardless of whether Dutriaux was the residential telephone subscriber.  To find otherwise would mean that when a business calls a person with a prerecorded message, that business could be liable to any individual who answers the phone despite the fact that the business only intended to call one person.  See Kopff, 568 F. Supp. 2d at 42 (fax addressed to individual gives cause of action to only that individual, it does not create cause of action for assistant who picks up the fax from the fax machine).

Leyse was not the called party and lacks standing to seek statutory damages from Bank of America under the TCPA. Therefore, the Amended Complaint must be dismissed pursuant to Fed. R. Civ. P. 12(b)(1).  It is unnecessary to reach the additional grounds asserted for dismissal.[3]

**IV.**

The defendant seeks an award of costs and attorneys' fees. The Court has the inherent authority to grant attorneys' fees

---

[3] The plaintiff seeks leave to replead, but the plaintiff has already filed an amended complaint and does not suggest how he could cure the lack of standing.  The cross motion to amend is therefore denied.  See L-7 Designs, Inc. v. Old Navy, LLC, No. 09 Civ. 1432, 2010 WL 532160 at *3 (S.D.N.Y. Feb. 16, 2010) (denying leave to replead when plaintiff had already filed an amended complaint and new amendment would not alter court's opinion).

14

when a party "acted in bad faith, vexatiously, wantonly, or for oppressive reasons."  <u>Chambers v. NASCO, Inc.</u>, 501 U.S. 32, 45-46 (1991) (internal quotation marks omitted).  This case has the whiff of the inappropriate in view of the pursuit of this action arising out of the very same telephone call that is the subject of the <u>Dutriaux</u> action while the <u>Dutriaux</u> action was stayed.  Moreover, it is odd that the plaintiff's attorney pursued this action in North Carolina when the action relating to the same telephone call was stayed in New York.  Nevertheless, the issues in the case are sufficiently close that the Court cannot find bad faith.

    The plaintiff likewise moves for attorneys' fees and sanctions, but there is no basis for the plaintiff's request.

    Therefore, the Court declines to award attorneys' fees to either party.

## CONCLUSION

The defendant's motion to dismiss for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1) is **granted**.

The Clerk is directed to close Docket No. 5, to enter judgment in favor of the defendant, and to dismiss this case for lack of standing.[4]

**SO ORDERED.**

Dated: New York, New York
       June 14, 2010

                                    _____
                                    John G. Koeltl
                                    United States District Judge

---

[4] Any of the parties in the Dutriaux action can of course move to lift the stay in view of the Supreme Court's decision in Shady Grove.